Judge Marshall
delivered the Opinion of the Court.
This was an action of ejectment brought by Buford against Adams, to recover eighteen acres of land which were claimed by both parties, under Mrs. Mary Craig. It appears that, in July, 1820, Mary Craig, then the wife of William M. Craig, being seized in fee simple of the land in controversy, a deed was made purporting to convey the land in fee simple from Craig and wife to Richard Shipp; but the certificate of the acknowledgment of Mrs. Craig not being such as was requisite for passing her right of inheritance, the deed was inoperative after the termination of the coverture, which happened by the death of Craig, in 1832. Under this deed, Shipp entered, claiming the land as his own in fee simple, and was in possession until 1824, when he conveyed it in fee to Thomas Steele, who entered and was possessed in like manner until April, 1832, when he conveyed it to Adams, in fee simple.
Adams having entered, and being in possession, claiming the land as his own against all the world, leased it, in February, 1835, to Thomas Payne, until the 1st of March, 1836; and Payne, being in possession under his lease, Buford, who — as stated by one witness — knew of the defect in the deed from Craig and wife, and had said if he could buy her claim be could gain the land, entered forcibly, and ousted Payne of his possession, and occupied the land until he was turned out under a writ of restitution, awarded in a proceeding by writ of forcible entry, instituted by Payne, in September, 1835. In that proceeding, the jury in the country having found a verdict against Buford, in-, 1835, he traversed the finding, whereby the case was removed into the Circuit *407 Court of Woodford county, to be tried at its March term, 1836; when a verdict and judgment were rendered against the traverser. But, in the mean time (in February, 1836,) Buford had obtained a deed from Mrs. Craig, conveying the land to him in fee simple, for a valuable consideration. And claiming, title under this deed, he commenced this action of ejectment in May, 1836, against Adams, who had been restored to .the possession, and was the tenant in possession when the declaration was served upon him.
On the 8th day of September, 1836, Mrs. Craig redelivered and acknowledged the original deed purporting to convey the land from her'husband and herself to Shipp, as was proved by two witnesses, before the clerk of the Woodford County Court on the following day, and certified by him upon the deed.
Upon these facts, the Court, in an instruction given at the instance of the plaintiff, based the right of recovery substantially on the following facts, submitted to the jury: viz. that the title had been in Mrs. Craig at the date of the deed of 1820 to Shipp; that her husband had died before the date of her deed to the plaintiff; that the plaintiff was in possession of the land when this deed to him was executed, and that the defendant was in possession when the declaration in ejectment was served upon him.
Several instructions were moved for by the defendant, asserting that the deed to the plaintiff was champertous; and that the law was for the defendant: first— if the deed was executed when the defendant was in the adverse possession of the land; second — if it was made when the plaintiff had a possession acquired by forcible entry; third — if it was made during the pendency of the traverse of the inquisition by which the plaintiff had been convicted of the forcible entry; and, fourth — if the plaintiff had forcibly obtained the possession with the intent to obtain the deed.
. To the refusal of these instructions, and to the granting of that which had been given, the defendant excepted; and then introduced a witness who stated that, in the summer of 1835, he had gone with Shipp to see *408 Mrs. Craig on. the subject of the deed to him, executed in 1820; at which interview she said, “the land had had been sold to Shipp for a full consideration, that she never designed to take advantage of her deed, and then expressly recognized it as her deed, and said she would at any time go to the clerk’s office and re-acknowledge it if he required it; but the deed itself was not present when this conversation occurred.” To the time of introducing this evidence there seems to have been no objection; but, on motion of the plaintiff, it was excluded from the jury on the ground of irrelevancy or incompetency: to which the defendant excepted. And a verdict and judgment having passed for the plaintiff, and the defendant’s motion for a new trial having been overruled, he has appealed to this Court.
In ejectment, the pit f claimed under a deed from the widow of C, who owned the fee at her marriage; the def’t under a deed of C and wife to S. which did not pass the wife s inheritance, owing to the insufficiency of the certificate of her acknowledgm’t. 'Evidence was given of declarations of the widow to S, prior to her deed to the plt’f, recognising her deed to S, & that she would, at any time, acknowledge it in the clerk’s office: held that the exclusion of this evidence was proper, because, giving it the utmost weight, it conduced to prove a re delivery of the deed to S. and if it had been actually re delivered, no proof or acknowledgm’t of it having been made in the proper office, within the time required by law, it was inoperative against the subsequent deed to the pit f, who was in possession of the land, and without no - tice.
*408 In revising the several • opinions of the Circuit Court presented by the exceptions, we shall first notice that which arises on the exclusion of the evidence just stated. It is contended that this evidence proved, or conduced to prove, the re-delivery of the deed of 1820, by Mrs. Craig to Shipp, the grantee, or that the declarations of the former amounted to a redelivery, under the circumstances, and therefore, that the evidence should have remained with the jury, as having an important-bearing on the question of title. . But without enquiring whether the evidence conduced to prove a i'e-delivery, or any thing tantamount to it — this argument is sufficiently answered by the consideration that, if the deed had been actually re-delivered, by manual transmission from Mrs. Craig to Shipp, at the time when the conversation took place, as such re-delivery could only have rendered the deed operative as a grant of her right from that time, and as no proof or acknowledgment of the redelivery was made before the clerk, or other proper officer within the time required by law for the proof or acknowledgment of deeds, nor indeed at all, the deed, notwithstanding the re-delivery proved on the trial by witnesses, would, under the -statutes regulating conveyances, have been wholly ineffectual against the sebsequent deed to Buford, duly recorded within the period prescribed, if this last deed *409 was valid in other respects, unless he had had notice of the prior re-delivery. For the first deed being void as to Mrs. Craig, but for the re-delivery derived no aid, as evidence of the transfer of her title, from- the previous acknowledgment and record of it made during the coverture, and to which the re-delivery whenever made had no relation or connection. And as there was not the slightest evidence conducing to show that Buford, who was in possession of the land at the time when this supposed re-delivery took place, had any knowledge or notice of it before his own purchase from Mrs. Craig was complete, the excluded evidence, giving to it the utmost force contended for, could have had no possible effect upon his title, and was, as to this point, wholly irrelevant.
Such declarations made by the widow to the grantee of her husband, while the land was held adversely to both, and possession of it not having been taken under the declarations considered as a license to occupy it, will not entitle the husband’s grantee, to a notice to quit, to sustain an eject, against him, by the widow, or one claiming under her.
Another objection made to this evidence is that, if the deed had been actually re-delivered at the time when the excluded declarations of Mrs. Craig were made, (and it is not contended that the declarations conduced to prove a previous re-delivery,) then the deed was champertous and void, because the land was in the adverse possession of Buford. But as the question and doctrine of champerty is directly and necessarily involved in another part of the case, and as the propriety of excluding the evidence does not necessarily depend upon the validity of this objection, the discussion of this point is waived for the present.
It is contended further that, if the evidence in question does not conduce to prove are-delivery of the deed, or if, though proving a re-delivery, it was not entitled to any weight on that ground, still it tends to prove such an assent on the part of Mrs. Craig, to the possession of the land by those claitping under the deed, as entitled the defendant to notice to quit, before an ejectment could be maintained against him, either by Mrs. Craig herself, or the plaintiff claiming under her subsequent deed. But if it were conceded that the declarations of Mrs. Craig would have had the effect contended for, if made to a claimant under the deed who was in actual possession at the time, or if, when made to Shipp, the immediate grantee, his alienee, immediate or remote, *410 wag jn pOSgession — still, as the land was at that time in the actual possession of Buford, who, so far as appears, held adversely both to Mrs. Craig and the claimants undar the deed of her husband, there was no possession in Shipp or his alienees, on which the implied assent that that possession might be retained under the deed, could operate, or to which it could attach. And if it could be construed to be, in effect, a parol lease, or a license to enter and occupy the land for an indeterminate period, and if in that point of view it .could escape the imputation of being champertous — still, as Mrs. Craig conveyed the fee simple to Buford before any possession was taken ■under the lease or license supposed, and as no possession ever -was in fact taken or held under it, we do not perceive how'it is possible, if the deed to him was valid, ‘that such lease or license, unconnected with any possession, and of which Buford had no notice, could ever bé asserted with any effect against his deed.
But a decisive answer to this argument is, that these declarations did not directly relate to the possession, but to the deed or title, and that they did not constitute, nor prove, any contract between the .parties, nor any privity, except so far as -they constituted or proved a redelivery of the deed, which would have given the right of possession, and created a privity between the parties; that as the actual delivery of the deed, if then made, would not have defeated or suspended the right of entry of Buford, under the subsequent deed to him, if the latter was valid, mere words evincing a willingness to redeliver it, could not have had that effect; and that, as Adams, like his grantors, claimed to hold the land in fee simple under the deed, and never held or claimed to hold by virtue of any assent or permission of Mrs. Craig subsequently given, and did not enter or regain the possession in virtue of any such assent, nor as her tenant, but mqrely in consequence of his previous possession, he would not have been entitled to notice from herself, if the right of entry had continued in her, and, a fortiori, was not entitled to notice from Buford as her alienee, if the right of entry was transferred to him, without notice of such assent or permission.
A conveyance of to land Tone in possession of champertous cause the grantee had, without right acquired the posession a forousterof a’thW person,who held advessely to both parties.
As the actual re-delivery of the deed of 1820, made on the 8th of September, 1836, and certified by the cleric, had no relation back, but only made the deed' operative as the deed of Mrs. Craig, from the time of its re-delivery, it could not affect the title of Buford under the previous deed of February, 1838, which had been, duly recorded; and it is entirely clear that, upon the facts pi’oved, the plaintiff had a right to recover; and the Court committed no error in giving or refusing the instructions as above stated, or in refusing a new trial; unless for some of the reasons suggested in some of the instructions moved for by. the defendant, or on the ground of some fact presented by the evidence, the deed. to the plaintiff was in violation of the act against champerty, and therefore inoperative to vest the title in him.
The first section of the act of 1824, against champenty and maintenance (Slat. Laio, 285,) declares that, no person shall sell or purchase any pretended title to land &c., of which any other person than such vendor or vendee shall, at the time of such sale or purchase, have possession adverse to the title so purchased; and makes void every deed &c., made in violation thereof. That Buford, to whom- the deed now in question was made, was in the actual possession at the time of the sale and , . , , . . conveyance to him; is put beyond question- by the evidence, and is not controverted; -and there is as little question that his possession; however tortious, was- in. his own right, and adverse to all the world. No other person then being in the actual possession, and his possession being absolutely andv exclusively his own, it is impossible, upon the mere facts, to bring the case within the letter of the act. For the vendee, and no one -else,' was in possession when the deed was made.
That the possession was gained by force, and- without shadow of right, does not change the fact that the vendee was in possession when the sale- and deed were made. Does the law, in its spirit pr policy, so regard the manner in which the possession may be gained, as that a deed must be adjudged to be champertous and void, though made to a party in the actual and exclusive possession, merely because he may have entered *412 forcibly and without right? We know of no principle, or adjudged case, which goes so far as this. The'forcible entry is, it is true, an unlawful act, and the law not only furnishes a remedy for removing the illegal possession, but also punishes the offence. But the acquiring of possession by force and without title, does not disqualify the wrong-doer from purchasing and receiving title while he is in possession, and no law, written or unwritten, so far as we know, forbids it. On the contrary, the ancient authorities are full of cases by which it is established that a release by a disseizee to his disseizor, or to the disseizor of his disseizor, is valid and effectual to unite the title with the possession. Littleton and his commentator, Coke, in the chapter on release and confirmation, are full of instances of this kind, which establish the doctrine that the disseizor of a person who is seized claiming the fee, gains to himself an estate in fee, which, though tortious and defeasible, is such, that a release or confirmation to him, may be operative to vest the rightful estate in him; and that a deed to him from the disseizee, in the usual form (by the words dedi et concessi, and the like,) will operate as a confirmation: which is defined to be a conveyance whereby a voidable estate is made sure and unavoidable, or a particular estate increased. 2 Thomas’ Coke, 516, &c.
But this could not have been so, if the law against champerty, at that day, had any regard, in its letter or spirit or policy, to the fact that the possession had been acquired by force and without title. It regarded only the fact of an independent possession. And it is scarcely necessary to add, that the law of champerty, at the present day, is neither more severe nor comprehensive in its letter, or spirit or policy, than it was in the days of Littleton and Coke.
The seventh section of the' act against champerty before referred to, (Stat. Law, 287,) expressly declares that, any person possessed of lands may take or bargain to take any outstanding title, of any other person, so far, and so far only, as it may confirm his former estate.— Here there is no qualification as to the kind of posses *413 sion, with regard to the manner in which it may have been acquired; and there is no qualification of the right of the person possessed &c. to take an outstanding title, but that his estate shall be capable of confirmation, and that he shall receive the title no further than to confirm his estate. But from the authorities above referred to, it is manifest that Buford, who entered forcibly and independently of all the world, not only gained an estate which might be confirmed, but gained such an estate that the conveyance to him in fee simple did not go beyond it. In section 519, 296, b, Littleton expressly puts the case, “ if I be disseized, and I confirm the disseizor, “ he hath a good and rightful estate in fee simple, albeit, “ in the deed of confirmation no mention be made of his “ heirs, because he had afee simple at the time of the confirma- “ tion” &c. 2 Thomas’ Coke, 527-8.
Nor, in such rendered champertous by the grantee, desiring hie entry with the intention of obtaining it.
An act of champerty concurrence of two or more persons'
If, then, the possessor of land, though he acquire the possession by force, may take a conveyance of the outstanding title without danger from the laws against champerty, is he put in a worse condition if, instead of entering simply with the design of gaining a tortious possession, or estate, and holding on to it, if he may, until it is confirmed by time into an indefeasible estate, , . .... . ,. . . ,r, he enter with the intent of obtaining, if he may, an earlier confirmation, by procuring a conveyance of the outstanding title to himself?
As the unlawful entry is not itself champertous, and does not make the subsequent conveyance champertous, it seems impossible that the superaddition of a pre-existing intention, which, existing in the mind of the wrongdoer alone, can only be a desire or wish to procure a conveyance, if it can be done, or the intention to acquire the possession forcibly, as a means of procuring the title lawfully, if it can be done, should make the transaction, or any part of it, champertous.
We can easily conceive of a case in which, although a deed,if compared with the circumstances actually ex-' isting at its date, would not seem to be champertous, yet it would, upon view of the entire transaction connected with it, be a violation, or evasion, of the champerty law. But this must be when and because there *414 is something ehampertous in some previous part of the transaction, of which the deed is but the consummation. But this ingredient, which may thus infect the whole transaction,- cannot consist in the mere intention which has been supposed, existing in the mind of the wrongdoer alone. There cannot be a ehampertous act,'or an act partaking of the nature of champerty, without the concurrence of at least two minds. So far as it concerns land, it must be a conveyance, or an agreement, or something in the nature of an agreement, evidencing or relating to the purchase or conveyance of land, or some litigation about it, between persons neither of whom is in possession. One person may indeed intend or desire to commit an act of champerty, that is, to do his part in a champartous act. But such intention is not in itself champerty. Nor can the individual intention of one man be even ehampertous, where neither the act intended to be done, nor the means adopted or contemplated for bringing it about, are ehampertous.
An agreement be tween two, that one should forcibly enter, and oust ,the occupant of land holding adversely to both of them, & the others should then convey to him, might be ehampertous, & might vitiate the deed made pursuant to it; but such an agreement or combination, cannot be assumed from the fact3, that the grantee had forcibly entered on the land, and did so with the intention of getting the conveyance from the title holder. And— When no such agreement appears, and the conveyance was not made so soon after the entry as to show that they were parts of the sametransaction, it cannot be considered champertous.
*414 If, therefore, it were admitted, as perhaps it should be, that any combination, or understanding, or concurrence of intention, between two persons out of possession, to the effect that one should take the possession forcibly,and the other should convey to him while holding the possession thus acquired, being itself ehampertous, might vitiate the conveyance by which the ehampertous understanding and intention of the parties were attempted to be consummated. We cannot apply the same conclusion to a case in which there has been no such understanding, or concurrence of intention, and no inducement or expectation held out by the holder of the title, which may connect him with the acts or intentions of the wrong-doer, while both are out of possession.
It may indeed be said that, where a person without title or claim enters on the possession of another, and afterwards obtains a conveyance from a third person, and especially if, before his entry, he appears to have contemplated the procurement of a conveyance from the same person, it may be presumed that there was some previous understanding between them, more or less explicit, which induced the forcible entry, and which *415 was consummated-by the conveyance. But, unless the conveyance followed so immediately upon the forcible entry, as to show that they were, in truth, but parts of the same transaction, the facts supposed, though they might lead to the inference that the wrong-doer supposed he might obtain the conveyance if he could obtain the possession, seem scarcely sufficient to implicate the title-holder, or to authorize the. presumption that there was any combination, or contract, or mutual understanding, between them, without which there could be no champerty. Such an immediate succession of one of these acts after the other, is neither assumed in any of the instructions asked for by the defendant, nor presented by the evidence in the cause. Nor does any of the instructions refused by the Court, assume the fact that there was an understanding, such as has been referred to, between Mrs. Craig and the plaintiff, asa ground for imputing champerty to the deed. And although the enquiry into the existence of such a combination, or understanding, may have been cut off by the instruction given on the plaintiff’s motion; yet, as the jury would not have been justified, from the evidence, in finding that there was any such combination, or understanding, or any inducement held out by .Mrs. Craig to the plaintiff, before his entry upon the land, we do not deem it necessary to give, and do not mean to intimate, an opinion upon the effect which such a fact, if it had existed, would or might have had upon the conveyance afterwards executed.
Nor will it beso because, at the time it was made, a warrant for a forcible entry was pending against the grantee at the suit of the former occupant.
With regard to the fact that the conveyance to Buford was made during the pendency of the proceeding against him under the writ of forcible entry — we deem it only necessary to say that, although the pendency of a suit may, under certain circumstances, aggravate the offence of selling the land which is in litigation, when neither vendor nor vendee is in possession, yet we do not understand that a person who is in possession is, by any statute or principle of law prohibited from taking the conveyance of an outstanding title, merely because he is defending his possession in a legal proceeding instituted against him, for the possession. And although *416 the conveyance to the plaintiff, was of no avail in the defence of the pc ssession in the particular proceeding, yet it did avail to confer upon him the right of entry. And as the judgment of restitution awarded against him, was not founded upon any adversary right of possession, and did not decide any question as to the right of possession, but was founded merely upon a naked possession, and operated merely to re-invest the former possessor with a naked possession — this right of entry conferred upon the plaintiff, must be deemed to have remained in him, unaffected by the proceedings and judgment in the writ of forcible entry.
From this view, it not only follows that there is nothing in the case as presented, which can invalidate the deed to Buford, or his right of entry under it, on the ground of champerty; but it seems also to follow that if, while he was in possession, Mrs. Craig had re-delivered the ancient deed, or made a new one to Shipp, or his alienee, or made any other conveyance or contract for transferring an estate in the land to a person out of possession, such re-delivery, or new conveyance, or contract, would itself have been champertous.
Upon the whole case, therefore, although it, would seem that Buford, without a shadow of right, so far as appears, committed an outrage, in violation of the rights of his neighbor, and of the laws of the community, we cannot say that this outrage was an offence against the laws relating to champerty, or that, by any law, the subsequent conveyance to him, was void, or in any manner ineffectual to vest in him the right of entry, which is sufficient to maintain his action of ejectment. If the facts exhibited in the present case are such as, in the opinion of the law-making power, should disqualify the wrong-doer from acquiring any right in consequence of a possession gained by force, that department of the government has the means of prevention, as to future cases, in its own hands.
The opinions of the Circuit Court, presented by the’ exceptions, being conformable to our view of the law as it is, the judgment must be affirmed.