## Brown, et al. v. White, et al.

(Decided April 29, 1913.)

### Appeal from Hickman Circuit Court.

1.  Ejectment—Deeds—Conflict Between Established Corners and Distances—Rule.—Where in the calls of a deed there is a conflict between the distances and the established corners, the established corners will control.

2. Land—Adverse Possession.—A party cannot, as against a superior title holder, acquire title by adverse possession to lands lying outside of his deeded boundary by merely claiming the land. He must actually enter on the land and hold it adversely for the statutory period.

3. Land—Adverse Possession.—Where a grantor conveys land to a part of which he has no title, the grantee does not acquire possession or title of such part as against a superior title holder by merely claiming the land under his deed. He must actually enter on the land and hold it adversely for the statutory period in order to acquire title.

4. Champerty—Possession—Enclosure.—To maintain the plea of champerty, possession by actual enclosure is not required. All that is necessary is an actual adverse possession, manifested by some act or fact sufficient to indicate to others that the person claiming to have been possessed had, in fact, the possession.

5. Champerty—Sale by Trustee in Bankruptcy.—A sale of land by a trustee in bankruptcy is a judicial sale, and the sale is valid though the land be adversely held at the time.

6. Courts—Bankruptcy—Jurisdiction.—A United States court having jurisdiction of a bankrupt has jurisdiction to order and approve the sale of his real estate, though lying. in a district other than the district in which the proceedings are instituted.

7. Ejectment—Deeds—Trustee in Bankruptcy—Evidence.—A certified copy of a deed executed by trustees in bankruptcy, and acknowldged as required by law, is. admissible in evidence.

8. Ejectment—Title—Deed—Evidence.—In the absence of a statute, the recitals in a deed made by trustees in bankruptcy are not evidence of title in them, or of authority to make the sale. The hiatus may be supplied by properly certified copies of the orders in the bankruptcy proceeding showing the adjudication of bankruptcy, the appointment and qualification of the trustees named in the deed, and the approval of the sale.

ROBBINS & ROBBINS, GUS THOMAS and JOE W. BENNETT for appellants.

R. L. SMITH, L. L. HINDMAN and D. O. MYATT for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiffs, J. D. White, S. U. Haworth and W. J. White, brought this action of ejectment against defendants, Luther Brown and Ethel Brown, to recover about ten acres of ground lying in three tracts in Hickman County, Kentucky. The defendants denied the title of the plaintiffs and pleaded title in themselves, both by record and adverse possession. They also pleaded that certain deeds constituting plaintiffs' chain of title were

champertous. A trial before a jury resulted in a verdict in favor of plaintiffs, and defendants appeal.

The facts developed by the record are as follows:

In the spring of 1890, C. C. Mengel, Jr., and Bro. Company (hereinafter called the Mengel Company), a corporation organized under the laws of this State, owned a tract of land situated in Hickman County, Kentucky, containing about 500 acres. The whole tract at that time was in the shape of a rectangular parallelogram, with the Mobile & Ohio Railroad beginning at the southeast corner and running diagonally across the east end of the tract.

On May 1st, 1890, the Mengel Company conveyed to Joseph Crossland, a colored man, about $141\frac{1}{2}$ acres of the west end of the 500-acre tract. The land so conveyed is described in the deed as follows:

"All of that certain tract of land in the County of Hickman and State of Kentucky, bounded and described as follows, to-wit: Beginning at a large white oak in Dobson's line, thence south $61\frac{3}{4}$ degrees east 109 poles and 3 links to a stake in McLane's Branch, with elm and sweet gum pointers, thence S. $28\frac{1}{4}$ degrees W. 210 poles to a hickory, dogwood and elm, thence North $61\frac{3}{4}$ degrees W. 102 poles to a sweet gum, thence N. $28\frac{1}{4}$ degrees E. $38\frac{1}{4}$ poles to a sweet gum, thence N. $61\frac{3}{4}$ degrees W. 7 poles to Joseph Crossland's southeast corner, thence N. $28\frac{1}{4}$ degrees E. $171\frac{1}{4}$ poles to the beginning, the said tract being the northwesterly portion of the tract of land conveyed by deed to Joseph Huffaker, &c., to said first party therein called C. C. Mengel, Jr., & Brother Company, instead of its correct name of C. C. Mengel, Jr., & Bro. Co."

On May 26, 1891, the Mengel Company conveyed to Joseph Crossland about 80 acres of land lying in the north central part of the 500-acre tract, and just west of the Mobile & Ohio Railroad. The description in the deed is as follows:

"Beginning at a stake on the M. & O. Railroad, 50 feet from the center of the right of way and running thence north $63\frac{1}{4}$ degrees west 166 poles and 16 links to a stake with gum and elm pointers, thence south 28 degrees west 75 poles to a stake with red oak, elm and hickory pointers, thence south $63\frac{1}{4}$ degrees east 166 poles and 16 links, thence north 28 degrees 75 poles to the beginning."

On May 21, 1894, Joe Crossland conveyed the 80-acre tract of land to his son, Samuel Crossland, by the same description contained in the deed from the Mengel Company to Joe Crossland and above set out. Sam Crossland died intestate and without issue, and his father, Joe Crossland, inherited the 80-acre tract from him. On December 23, 1908, Joe Crossland conveyed the land to defendants, Luther Brown and Ethel Brown, his wife. In the latter deed the land is described as follows:

"Beginning at a stake fifty feet west of the center of the M. & O. R. R. in the line of the R. R. Land, thence N. 61¼ degrees west 170 poles to a stake in the branch, thence south 28½ degrees west 76 poles to a stake with pointers, thence S. 61½ degrees E. 205 poles to a stake 50 feet west of the center of said railroad with elm pointers, thence northward with said railroad to the beginning, containing 89 acres."

After selling the two tracts, one consisting of 141½ and the other consisting of about 80 acres, the Mengel Company continued to own the balance of the land until June 10, 1905. On that day it sold the balance to Isaac Bodkin. The deed describes the land conveyed as the whole tract of 500 acres, giving its metes and bounds, and then excepts therefrom the tract of 141½ acres, sold to Joe Crossland on May 1, 1890, and also the tract of about 80 acres sold to Joe Crossland on May 26, 1891. Subsequently Bodkin sold the land conveyed to him to W. L. Salmon by deed dated October 15, 1908. Salmon sold and conveyed to the Hardy Grain Company, a corporation, by deed dated March 16, 1909. Thereafter the Hardy Grain Company went into bankruptcy, and S. Waddell and others, trustees in bankruptcy of the Hardy Grain Company, conveyed the land to plaintiffs on July 11, 1910.

It will be observed that both plaintiffs and defendants claim through a common grantor, the Mengel Company. The following plat shows the land in controversy:

The land in controversy is divided into three tracts. The first tract is a narrow strip of land about 3 poles and 9 links wide and 75 poles long and lying between the lines E-F and B-C, on the west side of the 80-acre tract conveyed by the second deed to Joe Crossland. The second tract lies between the line C-D and the line F-G up to the point of that line opposite to D. The third tract lies between the railroad on the east and the lines A-D and D-G.

The evidence shows that if the courses and distances mentioned in the second deed to Joe Crossland be followed, the land so conveyed will be represented by the figure B, C, D, A. The conveyance, however, does not show any established corners at the points B, C and D. The evidence does show, however, that there are established corners at E and F, and that these corners correspond to the corners called for in the second deed to Joe Crossland. There is also evidence to the effect that there is a marked line from E to F and from F to D and for a short distance beyond D. If the courses and distances in the second deed to Joe Crossland be followed, the survey stops at the point D; but there is no established corner either at D or at G. There is some evidence tending to show that Joe Crossland claimed to the line E-F on the west, the line F-G on the south and to the railroad right of way on the east. There is also evidence to the effect that he claimed no further than the lines B-C on the west, C-D on the south and A-D on the east. The evidence further shows that none of the strips of land in controversy were enclosed until a short time prior to the institution of this action, although there is evidence to the effect that a field of about 60 acres on the 80-acre tract was cleared and in cultivation, and this field extended in places west of the line B-C and south of the line C-D. The evidence, however, fails to show for what period of time the field was cleared or cultivated. There is practically no evidence of possession of the tract A, D, G, A, except the occasional cutting of timber. About a year or more before the bringing of the action defendants extended their fence so as to follow the lines A, E, F, G, A.

The trial court evidently construed the second deed to Joe Crossland as including only the land embraced within the lines of A-B, B-C, C-D and D-A, as he authorized a recovery on behalf of defendants only in the event that they and those through whom they claimed had been in adverse possession of the land in dispute for the statu-

tory period. In reaching this conclusion the court was evidently of the opinion that the courses and distances in that deed controlled. In this conclusion he was in error. As stated above, the points E and F are established corners, fixed by the original deed to Joe Crossland. While the distances in the first and second calls of the second deed to Joe Crossland do not reach the corners E and F, yet those corners are called for. That being true, the distances must give way to the established corners called for in the deed. Doe v. Kennedy, 1 J. J. Marshall, 447; Creech v. Johnson, 76 S. W., 185, 25 Ky. Law Rep., 657; Brockman v. Rose, 99 S. W. 311, 30 Ky. Law Rep., 553. It follows, therefore, that the record title to the two strips lying between the lines B-C and E-F on the west, and C-D and F-D on the south, is in defendants, and there being no adverse possession by plaintiffs of either of these two strips for the statutory period, plaintiffs failed to show title to either of said strips.

As to the triangular strip of land, A-D-G-A, a different question is presented. There is no established corner at D or beyond D. The line F-D does not call for a corner on the railroad right of way, nor does the last call in the deed run with the railroad right of way. On the contrary, the call from F to D corresponds in distance with the call from A to E, and the last call in the deed corresponds with the line A-D and runs northeast instead of northwest with the railroad right of way. There can be no doubt, therefore, that the tract A-D-G is not included in the second deed to Joe Crossland. Having no record title to this tract, the Crosslands could not acquire title against the superior title holder by merely claiming beyond their deeded boundary, and defendants who acquired title through the Crosslands, who had no title, although their deed covered the triangular strip in controversy, acquired no title by their deed; and being junior title holders, and not having actually entered on the strip in controversy and held actual possession of it for the statutory period, they acquired no title to this strip by adverse possession. As defendants have no record title to the triangular strip, and as the proof is insufficient to show adverse possession for the statutory period, it remains to consider the plea of champerty. In this connection it is proper to say that in order to maintain a plea of champerty, possession by actual inclosure is not required. All that is necessary is actual adverse

possession, manifested by some act or fact sufficient to indicate to others that the person claiming to have been possessed had, in fact, the possession. Moss v. Scott, 2 Dana, 271; Brown v. Wallace, 116 S. W., 763. As neither of the Crosslands ever had actual possession of the triangular strip, the plea of champerty is confined to those deeds of plaintiffs' grantors made after December 23, 1908, when Joe Crossland conveyed to the defendant; and as to deeds made after that time the plea of champerty is available only in the event that defendants actually entered upon the triangular strip, and were in actual adverse possession of it at the time any of said deeds were made. In this connection it is proper to say that a sale of land by a trustee in bankruptcy is a judicial sale and valid, though the land be adversely held. Carlisle v. Cassady, 20 Ky. L. Rep., 562; Bryant v. Prewitt, 132 Ky., 799; Caldwell v. Sprigg's Heirs, 1 B. Mon., 369. The plea of champerty, therefore, is confined to the deed made by Salmon to the Hardy Grain Company on March 16, 1909. As defendants did not acquire title by their deed, a mere claim of possession under their deed did not constitute actual possession as against the superior title holder. In order to maintain the plea of champerty, they had to be in actual possession of the land, as hereinbefore defined. If there be no other proof of actual possession at the time of the deed from Salmon to the Hardy Grain Company, the question of adverse possession will depend on whether or not the triangular strip was then enclosed by a fence. The question whether or not defendants were in actual adverse possession of the triangular strip of land will be the only question to be submitted to the jury on the return of the case.

Other questions arise which it will be necessary to consider. The objection that the United States Court for the District of Tennessee had no jurisdiction of the land in controversy because it lies in Kentucky is without merit. Under the Bankruptcy Act, the trustees acquire the title of the bankrupt wherever his property is located, and the court having jurisdiction of the bankrupt has jurisdiction to order and approve a sale of his real estate, though lying in a district other than the district in which the proceedings are instituted. Thomas v. Woods, 97 C. C. A. 535, 173 Fed., 585, 26 L. R. A., 1180, and cases cited.

The deed from the trustees to plaintiffs having been properly acknowledged and recorded, a certified copy of

the deed was properly admitted in evidence. Kentucky Statutes, Section 519.

Notwithstanding this fact, however, there is a link in plaintiffs' title which has not been sufficiently proven. Under our statutes and decisions, a commissioner's deed proves itself; that is, it is evidence of the vesting in the grantee of the title of the parties to the proceeding. For that reason no other evidence is required. Hilton v. Belcher, 114 Ky., 172. We have no statute making a deed of a trustee in bankruptcy, or its recitals, *prima facie* evidence of title. In the absence of a statute, such recitals in a deed are only binding on the parties, and cannot be regarded as evidence of title against strangers.

As plaintiffs' title stands, therefore, there is no proof of title in the trustees or of authority to make the sale. On a return of the case, this hiatus may be supplied by properly certified copies of the orders in the bankruptcy proceeding, showing the adjudication of bankruptcy, the appointment and qualification of the trustees named in the deed, and the approval of the sale.

Judgment reversed and cause remanded for new trial consistent with this opinion.