## Lanham v. Huff.

(Decided February 22, 1929.)

140

GEORGE G. BROCK for appellant.

HENRY C. HAZLEWOOD and HAZLEWOOD & HAMM for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On October 7, 1841, there was patented to William Morris, by the commonwealth of Kentucky, a tract of land in Laurel county containing about 125 acres, which appellee and plaintiff below, W. F. Huff, claims to have acquired by mesne conveyances, and that he was the owner and in possession of it at the time he filed this equity action in the Laurel circuit court against appellant and defendant below, T. M. Lanham, to obtain judgment quieting his title to 58.24 acres of land which he alleged was within the Morris patent so owned and possessed by him.

On the 7th day of June, 1787, the commonwealth of Virginia issued its patent to James Reynolds, assignee of James Craig, for 16,142½ acres of land, which was then in what was known as Lincoln county, Va., a part of which is within the present boundary of Laurel county. On September 27, 1912, Martha W. Myers and D. F. Myers, conveyed to defendant's immediate vendor, L. M. Mears, a tract of land in Laurel county containing 400 acres, and which the deed states is a part of the Reynolds patent. The vendee in that deed, L. M. Mears, on April 20, 1923, conveyed to defendant 102.04 acres of the 400 acres conveyed to her by the Myers deed, and which description in that deed lapped upon the Morris patent, claimed to be owned by plaintiff, to the extent of the 58.24 acres above mentioned.

Defendant answered, denying plaintiff's title, and claiming title and possession in himself, and sought by counterclaim and cross-petition the same relief against plaintiff as was sought by the latter in his petition. He also interposed a plea of champerty. Proper pleadings made the issues, and upon final submission the court dismissed defendant's counterclaim and quieted plaintiff's title to the contested land, and, complaining of that judgment, defendant prosecutes this appeal.

Defendant directed his proof to the establishment of these facts: (1) That the Morris patent, at least to the extent of the contested land, lapped upon the Reynolds patent, and to that extent it was void, even if plaintiff had succeeded in establishing his title thereto, but which latter defendant denied; (2) that the contested land was a part of the Reynolds patent, and by mesne conveyances he obtained the title to it and was entitled to the relief asked by his cross-petition and counterclaim; (3) that, if he was in error as to fact 2, then he and his vendors had acquired title to the contested land by adverse possession; and (4) that, if incorrect as to fact 3, then he was in the adverse possession of the land at the time plaintiff acquired his title, and which fact rendered plaintiff's title void under section 210 of our statute against champerty. The court, by its opinion filed in the cause and made a part of the record, found all of such facts against defendant, and from which it will be seen that the only questions presented are ones of fact.

The record is large, and contains the testimony of a number of surveyors who testified as to the location of both the Reynolds and Morris patents, and there was also much reputation testimony by old citizens of the community upon those same issues. The beginning of the description of the Reynolds patent is thus stated therein: "Beginning at their (Phillips and Young prior patent of 42,629 acres) more southeasterly corner, in the line of the reserved land, at a white oak and dogwood, running thence south 42½ east 1,614¼ poles to a small hickory and large chestnut." The next call is northeast, and then different directions for succeeding calls to the beginning, and it is uncontradictedly established that, unless the first line is located far enough west to include the Morris patent, no part of the latter is within it. Two or three surveyors located the reserve line so as to exclude the Morris patent, while perhaps as many testified that the junior Morris patent was within the Reynolds patent.

The preponderance of the reputation testimony, which was admitted without objection, located the reserve line so as to exclude the Morris patent, and from the testimony as so generally stated by us the court found that the Morris patent did not lap on the Reynolds one, and, under the rule adhered to by this court, the finding of the chancellor upon that issue of fact will not be disturbed.

It is not seriously contended that plaintiff failed to connect his title with the Morris patent. The court found that he did, and with sufficient evidence to sustain that finding so as to not authorize us under the same rule to disturb it. It therefore results that plaintiff established the superior record title, and which leaves for determination the other two issues of (3), defendant's acquired title by adverse possession, and (4) the alleged champertous character of plaintiff's deed.

Defendant's vendor contracted for the 400 acres of land conveyed to her by the Myers some considerable time before she obtained her deed from them, and in the meantime she began the removal of timber from the controverted land, and on a portion of the 400-acre tract she so obtained, and adjoining that in controversy, she put a sawmill and manufactured into lumber by far the larger part of the timber on the controverted land, and also obtained from it a large quantity of tanbark. She also had a tenant to clear a portion of it, and erected thereon a small cabin. She likewise ran around the controverted land two strands of barbed wire, fastened in some places to posts and at others to saplings. After she succeeded in practically exhausting the timber on the disputed land, all such evidences of possession seem to have been abandoned. The cabin was burned, and another that was erected was torn down, and by far the larger portion of the wire fencing was removed. It was in that condition when defendant obtained his deed from Mrs. Mears, and for five years prior to the conveyance of the land to plaintiff by his vendor, tracing title from the Morris patent, defendant permitted the contested land to remain in such abandoned condition. There had been nothing attempted to be grown upon it for that period, nor was there any house on it for as much as the same time immediately before plaintiff obtained his deed, and only scattering evidence remained of the once improvised wire fence around the land. It was not attempted to be established by the evidence that even such acts of adverse possession existed for a continuous period of as much as fifteen

years, but only at the farthest no more than ten years, when the described abandoned condition commenced. It is therefore clear that the court did not err in finding and adjudging that defendant had not acquired title by adverse possession, and which leaves for determination only issue 4, i. e., whether plaintiff's title was champertous.

This court has established the rule, in an unbroken line of decisions, some of which are cited below, that, inasmuch as the champerty statute is penal in its nature, the evidence to establish the facts authorizing its application should be clear and convincing, and, since there are so many elemental facts entering into the determination of the question, each case must be determined on its own facts. Some of the fundamental rules for the establishment of such facts are: That the adverse possession necessary to create the defense must be actual and not constructive, and that it must be open, notorious, visible, and of such a nature as, if continued long enough, would ripen into title. See Myers v. McMillan, 4 Dana, 485; Cardwell v. Sprigg's Heirs, 7 Dana, 36, and again in 1 B. M. 369; Mays v. Kenton, 64 S. W. 728, 23 Ky. Law Rep. 1052; Interstate Investment v. Bailey, 93 S. W. 578, 29 Ky. Law Rep. 468; Krauth v. Hahn, 139 Ky. 612, 65 S. W. 18; Brown v. White, 153 Ky. 452, 156 S. W. 96; Le Moyne v. Litton, 159 Ky. 652, 167 S. W. 912, and Kentucky Union Co. v. Hevner, 210 Ky. 121, 275 S. W. 513. It is an equally well-established rule that adverse possession may be abandoned so as to interrupt the right to the acquisition of a prescriptive title and so as to avoid the defense of champerty, although the adverse possession once existed. 2 C. J. 99, sec. 130, and cases cited in the notes. The possession, we repeat, which is necessary to enable the alleged adverse holder to avoid the title because champertous must be actual possession of the nature above described, and it must exist "at the time of the execution of the deed," which statement is a part of the text in 11 C. J. 257, sec. 47, and it is supported by a great number of cases from this court cited in note 6 thereto. Therefore, if the once acquired actual possession should be abandoned, and during that abandonment a conveyance to a third party is made, his deed may not be attacked as champertous. The testimony in this case clearly shows, and the chancellor so found, that the former actual possession of defendant, if he ever had any, and also that of

his immediate vendor, was abandoned years before plaintiff obtained his deed, and, that being true, the defense of champerty was unavailable.

Wherefore the judgment is affirmed.