## Lawhorn et al. v. Hicks.

(Decided Feb. 3, 1933.)

JOHN M. THEOBALD for appellants.
R. S. LITTLETON for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

Leonard Lawhorn and the Harbison-Walker Re-

fractories Company have appealed from a judgment taking from them and awarding to Hicks a strip of about two acres or less of land of which Lawhorn was in possession as tenant of his coappellant and which it is claimed belongs to the latter.

All parties to this controversy claimed this land under Perry G. Henderson, who formerly owned all of it. It is admitted that Wesley Hicks owns the northern part of this Henderson land and the Harbison-Walker Refractories Company owns the southern part of it, and its coappellant, Lawhorn, is in possession thereof, as its tenant, and is, so Hicks claims, wrongfully in possession of the part for which Hicks sued and recovered.

This controversy has grown out of a dispute about the correct location of the line between their respective properties. They even agree upon a black oak in the eastern line of this Henderson tract as a common corner, it being the northeast corner of appellant's land and southeast corner of appellee's, but they agree no further. Hicks claims the line from this black oak runs S. 87½ degrees W. 494 feet, then N. 80 degrees W. 59 feet, to the Picklesimer line while the refractories company claims the line from the oak runs N. 49¾ degrees W. 327 feet to three small white oaks, thence S. 87¼ degrees W. 151 feet to a white oak stump, thence N. 68½ degrees W. 98 feet to the Picklesimer line.

We shall refer to the line claimed by Hicks as the southern location and to the line last described as the northern location. As Wesley Hicks sued to put appellants out of possession, the burden was on him to establish his own title.

In 1900 Perry G. Henderson sold to Tom Tackett (now dead) the southern part of his property and described the line between what he was selling and what he was retaining as,

"Thence with a line of a cleared field belonging to Henderson a west course to George Picklesimer's line."

No one could tell from that just where that line was located, as there was some evidence that just south of the southern location there was an old field and that just north of the northern location there was an old field.

Tackett had his property surveyed and within ninety days sold it to one G. E. Carlysle by that survey. Perry G. Henderson says he was not present when this survey was made. Within a short time Carlysle sold the property and his grantee sold it to the Portsmouth, Harbison-Walker Company. The mining of sand was begun on this disputed strip about 1903 and operations continued until about 1910 or 1911.

In 1908 Perry G. Henderson sold the northern part of his land to his brother Henry Green Henderson and from him through eight mesne grantors Wesley Hicks derives title. The description in all the deeds in this chain contain the same metes and bounds for the western, northern, and eastern lines. The call of the southern line in all of them is the Portsmouth, Harbison-Walker Company's line; whether this means the northern or southern location does not appear; yet neither the eastern line nor the western line will when run out from the other fixed monuments reach the Portsmouth, Harbison-Walker Company's line at either location.

If in the deed from Perry G. Henderson to his brother and in the eight intervening deeds by which this title has come to Wesley Hicks the southern line had been described as *the line of the property conveyed to Thomas Tackett,* a different situation would be presented; but when this line is described as the *Portsmouth, Harbison-Walker Company's line,* that put these vendees on notice and it became their duty to make inquiry to learn just where that line was, hence they are to be charged with notice of all those things that by reasonable inquiry they would have learned, and if they had examined the public records they would have found three deeds in the appellants' chain of title in which this line is definitely put at the northern location. Sand was then being mined on this disputed property by Perry G. Henderson, but whether he was doing this as the owner and selling the sand to the Portsmouth, Walker-Harbison Company, or was mining for it, getting out its sand under a contract to get it out at so much per ton, is sharply disputed, but testimony of the disinterested witnesses indicates he was mining this as the company's sand and not his own. Anyway, those operations called for investigation. Men should not close their mouths when they ought to inquire, shut their eyes when they ought to look, or stop their ears when they ought to listen.

At the time of the conveyance from Perry G. Henderson to his brother and at the time of the eight intervening conveyances by which this title came to Wesley Hicks, the Portsmouth, Walker-Harbison Company, or its grantee Harbison Walker Refractories Company, were in possession of the southern part of this Perry G. Henderson tract with deeds thereto of record containing detailed, definite, and minute descriptions thereof and in which deeds the northern line of their property is given as the northern location. Being in admitted possession of a part, if not all of the land, south of the northern location of this line, they were in constructive possession of everything within their recorded boundary. See Rader v. Howell, 246 Ky. 261, 54 S. W. (2d) 914. So that no matter whether they could have successfully maintained their possession as against Perry G. Henderson, though it looks like they could, still their possession was enough to make void and champertous the deed from Perry G. Henderson to his brother, and hence Wesley Hicks has succeeded to a title with a champertous taint upon it.

Wesley Hicks is the remote grantee of Perry G. Henderson under a deed in which Henderson warranted this title; therefore when the latter undertook to testify for Hicks in support of Hick's title, he was testifying in support of his own warranty thereof and about a transaction with Tom Tackett (now dead); hence his evidence was incompetent as he was testifying for himself. When the support of Henderson's testimony is taken from under that of the surveyor Gasling, then that of the latter falls; for all he knew about what or where to survey he had learned from Henderson. This leaves Hicks practically without evidence, and the appellants' motion for a peremptory instruction should have been sustained.

Judgment reversed.