**J. WALTER WRIGHT LUMBER COM-
PANY, Inc., Appellant,**

**v.**

**Walter BAKER et al., Appellees.**

Court of Appeals of Kentucky.

March 26, 1965.

Rehearing Denied Nov. 26, 1965.

John M. Stephens, Pikeville, Denver Adams, Hyden, for appellant.

A. E. Cornett, Hyden, for appellees.

PALMORE, Judge.

The appellant company, which we shall call "Wright," brought this action for damages and injunctive relief against the cutting and removal of timber within the overlap of three conflicting patents, the senior of which was not owned of record by either of the parties at the time the suit was commenced. During the course of the trial (by depositions), the defendant-appellee Baker acquired by deed the record title to a major portion of the senior patent, embracing the area in question. Baker duly amended his counterclaim demanding that his title be quieted. Wright pleaded champerty. After the taking of further proof on both sides a judgment was entered in Baker's favor. Wright appeals.

The senior patent is DeGroot 43192, surveyed March 4, 1870. Wright owns DeGroot patents 43213, 43214 and 43215, surveyed March 5, 1870, all of which have been held and conveyed together and for purposes of constructive possession are thus to be regarded as a single tract. Cf. Parsons v. Dills, 159 Ky. 471, 167 S.W. 415, 416 (1914). Wright also owns Ballenger Garrison patent 59770, surveyed in 1883, and Joseph Waggoner patents 45941 and 45942, surveyed in 1864. All six of these patents of Wright's lap on DeGroot 43192. However, the overlap of Waggoner 45941 is not within that portion of DeGroot 43192 deeded to and claimed by Baker, and that of Waggoner 45942 appears to cover only a very negligible part of it, if any.

It may be assumed for purposes of this case that until the present controversy arose no one ever had entered into actual possession claiming under color of title of DeGroot 43192. When Baker cut the timber in question he was claiming through the Garrison patent, and admittedly his title was inferior to Wright's chain under the same patent as well as under its three DeGroot patents. To defeat Baker's senior record title under DeGroot 43192 Wright relies on proof of adverse possession under color of title of its junior DeGroot patents 43213, 43214 and 43215 (and, perhaps, under the Garrison patent), and cites the case of Ford Motor Company v. Collett, Ky., 303 S.W.2d 553 (1957), which involved another group of DeGroot patents lying immediately west of DeGroot 43192.

In Ford Motor Company v. Collett it was held that since no one was in possession under an elder patent (Gilbert) the entry of an adverse claimant under color of a conflicting junior title, "coupled with its continuous actual occupancy and cultivation of part of its boundary, while claiming to the limits of its deed, constituted possession of the entire boundary." However, it must not be overlooked that the *actual* possession of the junior titleholder in that case was *within the overlap.*

"The rule is well settled in this state that the actual occupancy by a junior patentee of that part of a tract of land which does not interfere with the elder grant does not give him possession of the part within the interference, *although the elder patentee never actually entered upon any part of the land included in his patent.*" (Emphasis added.) McCoy v. DeLong, 22 Ky.Law Rep. 719, 58 S.W. 704 (1900). Otherwise, as pointed out in Trimble v. Smith, 7 Ky. (4 Bibb) 257 (1815), the senior owner might be divested of his title without any possibility of knowing that the junior claimant was holding against him. To the same effect, see Wilson v. Stivers, 34 Ky. (4 Dana) 634 (1836); Burt & Brabb Lumber Co. v. Sackett, 147 Ky. 232, 144 S.W. 34, 37 (1912); Tennis Coal Co. v. Sackett, 172 Ky. 729, 190 S.W. 130, 139 (1916); Morgan v. Big Woods Lumber Co., 198 Ky. 88, 249 S.W. 329, 341 (1923); and Ramsey v. Hughes, 212 Ky. 715, 280 S.W. 99 (1926).

The evidence of possessory activities focused on four clearings, which for identification were numbered 1 to 4. The chancellor found as a fact that Wright did not

establish sufficient possession of any of these clearings to ripen into title.

Clearings 3 and 4 are irrelevant as a matter of law, because neither is within DeGroot 43192 or within the boundary of any senior patent that overlaps it.

■ Clearing 1 is wholly within DeGroot 43214 and Garrison 59770, both of which patents are owned of record by Wright. It is also partially within DeGroot 43192 but not in the portion covered by Baker's deed. Nevertheless, had Wright been able to prove 15 years' adverse possession of this clearing by it or its predecessors under color of one or the other of its two junior title chains, it would have established title by adverse possession throughout the interlap of the boundary under which it was claiming during the period its possession was ripening into title. That is because, when a junior claimant with colorable title enters upon the interlock at a time when the owner has no actual possession anywhere on his land, the junior claimant's possession extends throughout the interlock. 2 C.J.S. Adverse Possession § 198, p. 802; Miniard v. Napier, 167 Ky. 208, 180 S.W. 363, 366 (1915).

■ It was shown that No. 1 was an old clearing, dating back as far as 1890, and that for an unspecified period of time it had been tended by John Whitehead, one of Wright's predecessors in title to part of the Garrison chain. However, not only did the evidence fall short of proving any particular 15-year period of continuous adverse possession by Whitehead, but the descriptions in the deeds under which Whitehead claimed were not sufficient to establish color of title extending into that part of Garrison 59770 which laps the portion of DeGroot 43192 here in controversy. In other words, the description was not clear enough to define the interlock, if any. It is doubtful that Whitehead actually claimed beyond the ridge separating the Stinnett Creek and Elisha Creek watersheds, and certainly the evidence was not such that the chancellor would have been forced to

conclude that his color of title extended westwardly to the far limits of the Garrison patent, as apparently contended by Wright's main witness. In order for a deed to constitute color of title as a basis for extension of possession by an adversary entrant it must describe the land with reasonable certainty. Lipps v. Turner, 164 Ky. 626, 176 S.W.2d 42, 44 (1915).

■ Clearing 2 was opened by John Whitehead in 1930, that being the same year in which he conveyed the tract embracing No. 1 to Wright's predecessor, Fordson Coal Company. Probably some sort of swap was made in which Fordson bought off Whitehead's conflicting claim of title to part of Garrison 59770 and put him in possession, as its tenant, of what became No. 2. This clearing is within the overlap of Waggoner 45941, DeGroot 43213, and DeGroot 43192. It was farmed by Whitehead and his family for a number of years. Assuming they were in fact tenants of Fordson, there is no doubt that this possession extended throughout one or the other (or perhaps both, but we need not decide) of the overlaps of Waggoner 45941 or DeGroots 43213, 43214 and 43215 (bearing in mind that the latter three are one) on DeGroot 43192. There was, however, a direct conflict of evidence on the point. Members of the Whitehead family (some of whom are related to Baker by marriage) insisted that the clearing was abandoned in less than 15 years. Again this was for the chancellor to decide. Wright bore the burden of proving adverse possession, hence the risk of non-persuasion.

It was shown also that from 1930 to 1946 Wright's predecessor, Fordson, leased out a portion of the property in controversy, Baker himself having been the lessee for 10 years of this time. However, there was no satisfactory proof of the extent to which actual, visible and continuous occupancy or possession was exercised under these leases.

■ The claim of champerty is based principally on KRS 372.070, which invalidates the attempted conveyance of land

held in the adverse possession of another. The adverse possession contemplated by this statute must be actual and not constructive, and it must exist contemporaneously with the execution of the deed. Lanham v. Huff, 228 Ky. 139, 14 S.W.2d 402 (1929). It was not shown that any part of the property acquired by Baker during the litigation and made the subject of his amended counterclaim was in the actual possession of ·anyone at the time the deed was executed.

■ Both parties recognize the general principle that the character of adverse possession necessary to render a deed void under the champerty statute is that which, if continuously maintained for 15 years, would ripen into title. Cf. Lanham v. Huff, 228 Ky. 139, 14 S.W.2d 402 (1929). As the only muniments of Wright's title which overlap any portion of the property conveyed to Baker are junior to DeGroot 43192, out of which Baker's title originates, under the authorities heretofore cited in this opinion no possession, actual or otherwise, held by Wright outside the overlap would extend into the overlap. Therefore, no such possession could ripen into title within the overlap.

In support of his champerty theory Wright refers to Curry v. Cox, 208 Ky. 653, 271 S.W. 700 (1925), and Stephenson Lumber Co. v. Hurst, 259 Ky. 747, 83 S.W. 2d 553 (1934), but concedes that our decisions on this subject have not been consistent. In the Curry case a senior titleholder's conveyance was held void because the junior titleholder had actual possession within the overlap. We understand that decision as representing a correct application of the fundamental principles hereinbefore discussed. But in the Stephenson Lumber Co. case the court evidently held that a junior claimant's possession outside the overlap would invalidate the senior titleholder's conveyance. There have been other decisions, scattered over

the years, of like import,[1] founded on the principle that actual possession of a portion of property will by presumption of law be extended to the boundaries defined in the possessor's color of title, but seeming to ignore the fact that one of the exceptions to that principle, at least in this state, is that such possession will not extend by construction into the bounds of a senior title.

"If he enters under a deed * * * he will be in the actual possession to the extent of his boundaries, or to the extent his boundary is not in the actual possession of another, *or unless the boundary described in his color of title embraces a lap upon a senior grant,* in which instance he will not be in the actual possession of the portion embraced in the conflict, unless he actually enters upon the part in conflict." (Emphasis added.) Tennis Coal Co. v. Sackett, 172 Ky. 729, 190 S.W. 130, 135 (1916).

"A further principle which we have not overlooked is that a claimant under a junior grant which laps upon a senior grant is not in actual possession of any part of his grant which is covered by the senior grant unless he actually enters upon the lap." Morgan v. Big Woods Lumber Co., 198 Ky. 88, 249 S.W. 329, 341 (1923).

"The rule is that where one claims under color of title and is in actual possession of a part of the land within his well-defined boundary, the law, by construction, carries his possession to the full extent of his boundary, except that as against actual adverse possession this rule will not prevail, *and except that as against superior title this rule will not prevail,* unless the entry and possession be upon the interference." (Emphasis added.) Ramsey v. Hughes, 212 Ky. 715, 280 S.W. 99, 100–101 (1926).

The "rule relating to possession under color of title to a well-defined boundary is not sufficient to give appellant and those

---

1. Cf. Lawhorn v. Hicks, 247 Ky. 205, 56 S.W.2d 996, 998 (1933); Pioneer Coal Co. v. Asher, 237 Ky. 254, 35 S.W.2d 285 (1931).

under whom she claims title by adverse possession, because that rule will not prevail against superior title unless the entry and possession be upon the interference." Pursifull v. Green, 214 Ky. 516, 283 S.W. 1055, 1056 (1926).

"Where conveyances or grants of land interfere with each other, portions taken under the junior grant outside of the elder grant will not give possession of the interferences." Combs v. Algoma Block Coal Co., 283 Ky. 160, 138 S.W.2d 1033, 1036 (1940).

"The appellees invoke the rule that where one claims under color of title and is in actual possession of a part of the land within his well-defined boundary, the law of construction carries his possession to the full extent of his boundary. This rule is subject to exceptions, however, one of which is that it will not prevail against superior title unless the entry and possession be upon the interference. Where two patents overlap possession of any portion of the junior patent, other than the overlap, is insufficient to confer title by adverse possession to the overlap." Cline v. Blackburn, 292 Ky. 713, 168 S.W.2d 15, 16 (1943).

And, as we have said, this is true regardless of whether the senior titleholder has made any actual entry whatever. McCoy v. DeLong, 22 Ky.Law Rep. 719, 58 S.W. 704 (1900); Trimble v. Smith, 7 Ky. (4 Bibb) 257 (1815).

Consistent with the principle stated in the foregoing quotations, it was held in Brown v. White, 153 Ky. 452, 156 S.W. 96, 98–99 (1913), that a plea of champerty by holders of the inferior paper title would be available only if they had actually entered upon the strip of land covered by the conflicting deed descriptions. The reason for this rule is that in order to make a conveyance champertous the possession must be such as would put the purchaser on notice of the hostile claim. Travis v. Bruce, 172 Ky. 390, 189 S.W. 939, 943 (1912).

Gatliff v. Carson-Muse Lumber Co., 169 Ky. 810, 185 S.W. 110 (1916), provides an apt illustration. In that case the actual occupancy of one acre under a deed covering 101 acres was held ineffective to sustain a plea of champerty against a conveyance of the remaining 100 acres by the true owner of the 100 acres (no part of which was in the *actual* possession of anyone):

"Manifestly, their occupancy of and possession of the 1 acre did not extend over and include the 100 acres so as to oust the constructive possession of the real owner claiming under the senior patent. In other words, their occupancy of the 1 acre, which was outside the 101 acre survey, was no notice to appellant when he took his deed that they were claiming possession of the 100 acres."

There may be some circumstances in which possession sufficient to ripen into title is not enough under the champerty statute,[2] but we know of no instance in which the converse can be so. Stephenson Lumber Co. v. Hurst, 259 Ky. 747, 83 S.W.2d 48 (1934), holding a deed champertous by reason of a possession which in the same opinion was held insufficient to ripen into possession (because not within the lap), reached a completely anomalous result. To the extent inconsistent with the principles set forth in this opinion it is overruled, as are the decisions cited in footnote 1.

It follows, of course, that the conveyances to Baker were not champertous under KRS 372.070. Nor were they so merely because of the title's being in litigation at the time. A party already in litigation may perfect his claim or title. Adams v. Buford, 36 Ky. (6 Dana) 406, 415 (1838). And two parties both of whom have a bona fide claim to property in or about to be in litigation may legally contract with respect to the property and the litigation. Cf. Ventro v. Clinchfield Coal Corporation, 199 Va. 943, 103 S.E.2d 254, 262 (1958). Orton v. Smith, 59 U.S. (18 How.) 263, 15 L.Ed. 393 (1856), in which an interloper pur-

2. Cf. Moore v. Baker, 92 Ky. 518, 13 Ky. Law Rep. 724, 18 S.W. 363 (1892); Sullivan v. Hill, 33 Ky.Law Rep. 962, 112 S.W. 564, 565 (1908).

chased the interests of two litigants, is not analogous.

The re-recording in 1960 of the 1948 deed to Baker's predecessor in title, in which DeGroot 43192 is shown on the 1960 but not on the 1948 copy, is an equivocal circumstance, but we do not believe it demands a conclusion that the original was altered in the interim, even though the clerk testified that it was the practice in his office, after recording, to proofread the record against the original. It is true that Baker did not put the original deed in evidence; but neither did Wright seek to have it produced. Nor was inquiry made of the parties to the deed. Assuming that the authentic content of the instrument was properly in issue, we think that under the state of the evidence it was the trial court's province to decide.

The judgment is affirmed.

