judge Marshall
delivered the Opinion of the Court.
This action of ejectment was brought in the county of Pendleton, find afterwards removed by change of venue to the Scott Circuit Court, in which it was tried. The declaration and notice were served upon John Righter, the tenant in possession, in November, 1829. At the succeeding April term, a common order and order of survey were taken. But the common order was never executed on Righter, who was returned “not found.” At the July term, 1831, aii order was made admitting him to defend; and at a subsequent day, an order was made purporting that the parties consented that a certain plat and report of survey on file in another suit, in, which McMillan’s heirs were plaintiffs, and John Sowder &c. were defendants, should be read as evidence -in this case. And at the April term, 1832, on the motion of Righter, it was ordered that his name should be stricken from the record as defendant, on the ground (as the order states) that he had been made a defendant without his privity, knowledge or consent, and that he disclaimed all inter•estin the. land.
Lewis Myers and the heirs of Samuel Noe were afterwards made defendants; and on the trial, the plaintiff •offered in evidence the copy of the plat and survey above mentioned, which, notwithstanding the objection of the defendants, was admitted by the Court. The propriety of admitting it presents the first question now to be determined. Upon the whole record, as stated above, there was no consent to the reading of this paper, except on the part of the plaintiffs; none, at least, by any one who could bind the defendants. And as it does not appear that they were parties to the suit in which the survey Was made, or tfiat they were present at the survey, or *486 notified to attend; it was clearly erroneous to admit it to be read as evidence against them.
The plt’fs, without title, rely upon a former alleged possession, showing the ex~ tent of it only, by deeds. The def’ts, also without title, rely on their possession. To maintain an eject, upon a mere possession shortof 20 years, the pl’tf must show, that he, or those under whom he claims, had, at the time of def’ts entry jon the land, such ¡a possession as would enable him to maintain trespass. But an actual possession may extend to a definite boundary beyond the improvements,& may continue a reasonable time after the pedis possessio has peased.
History ofthe various tenancies, which have ex,isted, from time the land’in 'con^ froversy.
After placing the plat and report before the jury as evidence, the lessors of the plaintiff read a patent, dated in 1786, granting to James Moody fourteen thousand acres of land, and also, a deed to themselves from Samuel Downing, purporting to convey an interest in Moody’s patent. But the patent and deed were read only to show the boundary to which they claimed; and without showing any documentary title, they based their right of recovery on an alleged prior possession of the tenement in contest, under an assertion of right as the owners of Moody’s patent. As the defendants showed no regular title in themselves, or those from whom they derived the possession, the general questions presented in this case, are very similar to those which occurred in the case of Sowder &c. vs. McMillan's Heirs, decided at the present term. [Ante, page 456.] . The Court in that case decided, that in order to maintain the action on a mere possession short of twenty years, the plaintiffs must show sucha possession in themselves, or those under whom they claim, at the time of the entry under which the defendants hold the possession, as to constitute that entry a trespass, and such as would sustain an action of trespass for the entry. . And it is well settled, that in order to maintain the action of trespass, an actual possession is necessary. It is also well settled, that the actual possession on which trespass may be maintained may extend to a definite boundary beyond the actual occupancy or enclosure, and may continue for a reasonable time after the pedis possessio has ceased.
The defendants claim a possession independent of the plaintiff’s, commencing about the year 1820, and continued to the commencement of the suit,
The plaintiffs rely upon a prior possession acquired by their ancestor, Samuel McMillan, in 1815; and also, upon an entry on the land within Moody’s patent and other acts done by Tyree Oldham, as their agent and lessee, in 1820 and afterwards, which are supposed to jiave interrupted the possession which the defendants *487 claim, or to have subjected it to the right of the plaintiffs. '
Whether Samuel McMillan, who died between 1815 and 1820, was ever in possession of the land in dispute, , , r r 1 • , • I • depends, so lar as appears 1 rom the evidence in this cord, upon the question, whether the acceptance of a lease from him, by one James, who lived upon the land in 1815, was effectual to vest the possession, or a right to it, in him. And this depends upon the question of fact, whether James was at that time (as he said he was) the tenant of Massie, who set up claim to the land; for if he was, his attornment was illegal and ineffectual. This question of fact we need not decide.
After James accepted the lease from McMillan, he remained upon the land for a year or two, and left it. From which time, until about the beginning of the year 1820, the tenement was permitted to remain unoccupied, and in the interval (said to be about three years,) the houses and fences were burnt or otherwise destroyed, and the place went to wreck. In 1820, James Taylor entered upon it as a squatter, asserting no right whatever. He rebuilt the houses and fences, and continued in possession, professing subjection to no title, until August, 1821, when he took a lease from John Matherly, who asserted right to two hundred acres of land, including this tenement, under Bell’s patent, which is younger than Moody’s. T-wo or three years afterwards, he surrendered the possession to Matherly, who immediately settled another tenant on it; by whom it was held until the spring of 1827, when it was surrendered to Samuel Noe (the father of some of the defendants,) in consequence of his having purchased Malherh/s right at a sale under execution. Noe entered, claiming the land as his own, under this sale, and continued in possession till his death, shortly before this suit was commenced.
In 1820, while Taylor was living on the tenement in question, Oldham, under a contract with the lessors, for boring for salt water within Moody’s patent, entered on another part of the land, built a cabin or shanty for accommodation while engaged in the work, in which he continued for about a year, when he abandoned it, and, *488 iii the fall of 1821, received a lease from McMillan's heirs, for all their possessions and interest in Moody’s patent, for five or six years, but did not subsequently occupy or use the land. In 1823, however, he induced Taylor, who had previously become the téhant of Matherly, to take a lease from him, and agree to pay him the rent for that year. And he subsequently assigned bis lease from the McMillans, to Samuel Noe, who made some effort to get the possession from Taylor, in which he failed, and did not enter upon the land until he had purchased Matherly’g right, as above stated.
The fact, that a party who has had an actual pos session of land, but has left it, “has not abandoned bis claim to the land”—a mere claim of ownership, does not, j)er se> a" mount to a continuation of the possession. Whether the pos .-session coniin,yes or not, must be determined by {his acts at the time of his departure, .and by ihe appearance of thé land afr ierwards, as woll as his claims and intentions.
And, though the acts of a party at thetimeheleaves the land, may be sufficient to relict, for a time, the presumption that the posses eior* is abandoned—unless there is something on the land itself to indicate it, the presumption of a continued posses sion can be but temporary*
Upon the hypothesis, that Samuel McMillan, the father of the plaintiffs, was possessed of this tenement in 1815 and 1816, claiming it as his own, the Circuit Coqrt; instructed the jury, that unless the lessors had abandoned their claim to the land before the subsequent entry of Oldham, they must find for the plaintiff. This instruction involves one of two propositions, viz: either that the fact of a prior possession, undbr a claim of own, ership, at a time three years before the entry of Taylor, without any regard to the question of possession at the time of that entry, gave the lessors of the plaintiff 4 right to regain the possession by entering upon Taylor (or bringing their ejectment,) unless they had abandoned their claim of ownership; or, that, notwithstanding the circumstances under which the actual occupancy of the tenement was relinquished, and though it lay waste and derelict for about three years, yet, as a matter of law, the actual possession continued in the lessors, unless they had abandoned their claim of ownership. Neither of ..these propositions can be admitted to be coi’rect.
; The first is obviously inconsistent with the principle established in the case of Sowder &c vs. McMillan's Heirs, and asserted in this, that actual possession at the time of the entry by which the defendants h.old the possession, is a necessary foundation of the action, where there is neither actual title, nor twenty years possession. The second proposition is liable to the objection, that it places the question of a continuance of the actual possession upon a wrong issue, by putting it on the single question of tfie continuance or abandonment of the pqr* *489 ty’s claim; which is not equivalent to a continuance or abandonment of his actual possession, and, when taken separately from other facts, is not evidence of one or the other.
The fact of continuing, or not abandoning, a claim of ownership of land, may be some evidence of an intention to return to it, though the actual occupancy be relinquished; and a party who relinquishes the actual occupancy with the intention of resuming it, does not by the mere fact of relinquishing it, under all circumstances, lose the possession. It is true, as a general proposition^ that the intention with which a man leaves a tenement is a material circumstance in determining whether he has thereby abandoned the possession of it; But it is not the mere secret intention of returning, or the meré secret intention of holding on to a claim of right, unaccompanied by any open act manifesting that intention, that is to control the obvious purport and palpable effect of openly relinquishing the actual occupancy and enjoyment of the land. Much less can these-demonstrations of intention be overcome by a mere assertion of claim at a distance from the land, after the occupancy has been relinquished, when there is neither any actual enjoyment, permanent or periodical, of the appropriate uses of the land, nor any indication upon the land itself, of any intention so to enjoy it, or of any present claim of proprietorship or possession.
The animus reverlendi which can qualify the effect of a present relinquishment of the use, and an open departure from the land, by one who has no actual title, must itself be indicated by open and unequivocal facts, connected with the manner and purpose of the departure, and the condition in which the tenement is left. And, although the circumstances existing at the time, may be such as to rebut the inference of abandonment, which might otherwise arise from a voluntary cessation to occupy the land, and may, by showing the intention to return, operate to preserve the possession after an apparent relinquishment of it; yet, even in that case, the possession cannot in general be adjudged to continue 8-ny great-length of time, merely on the ground that the *490 party may not have abandoned his claim, if there be nothing on the land itself, giving visible evidence of the intention to return, or no appropriation of its uses which can denote present possession or proprietorship.
A party who, by himself or his tenant, takes possession of a tract of land, a part of which is held by another occupant, acquires, by his entry, no possession of the part thus adversely held. And though the occnpant, being the tenant of another, shall attorn to, take a lease from, and pay-rent to, the claim ant who holds the other part of the tract claiming the whole, the attornment will avail the latter nothing. He can maintain no action upon his me-fi possession* against the .intruder who was thus previously possessed. '
*490 In the case of Jackson vs. Meyer, 3 Johnson's Rep. 398, the former tenant of the land having quit the possession, about or shortly after the time when he acknowledged the plaintiff’s title, and the tenement having remained vacant and unoccupied for several years before the defendant entered, this was llot. deemed to be such a possession as authorized a recovery in the action of ejectment': although the plaintiffs hod continued to pay taxes accruing on the land during the interval,and had also made partition of it shortly after the former tenant left it. These facts were considered by the Court as being evidence bf a claim, but not of actual possession. On the authority of this case, which is expressly in point, and for other reasons before given, we are of opinion, that the instruction under consideration was erroneous.
■ The real question on this part of the case, is, whether the lessors of the plaintiff were actually possessed of the land in contest at the time of Taylor’s entry. If they, or their ancestor, had previously abandoned the possession, they had no right to enter upon Taylor, or his successors in it, merely because they had once been in possession and still claimed the land. If they were in the actual possession at the time of Taylor’s entry, then, because that possession was removed by his unlawful entry and ouster, they had the right to regain it by entry, or ejectment, within twenty years, against him, or any of those, including the defendants, who acquired the possession from him, and cannot show title.
If, however the lessors were not, at the time of Taylor’s entry, in the actual possession of this tenement, either separately, or as a part of the larger tract-included in Moody’s patent, then the prior possession of their ancestor, supposing it to have existed in fact, is of no avail in this action. And their right of recovery must depend upon the acts of Oldham, and the effect to be ascribed to them. As, upon this hypothesis, the lessors had no right of entry on account of any previous pos- *491 session, and as their mere claim to be the owners of Moody’s patent gave them no right to enter upon any part of it, and certainly no'right of entry upon Taylor’s existing possession, it is entirely clear, that the entry of Oldham, while Taylor was occupying the tenement in question, being made, not upon his possession, but upon another part of the land, could not divest Taylor’s possession, or gain the possession of this tenement for the lessors. Poage's Heirs vs. Chinn, Spring Term, 1836, [ante, page 52.] Nor could the lease subsequently executed by the lessors to Oldham, nor the subsequent illegal attornment of Taylor to him, have had that effect. The lessors, then, upon the facts appearing in this record, acquired no possession of the Taylor tenement by reason of Oldham’s acts, prior to the entry of Samuel Noe, after his purchase of Matherly’s . interest in the land. And those instructions of the Court, and also those qualifications and refusals of instructions moved which assume that they did acquire possession of this tenement, or that they were entitled to recover it, in consequence of the entry of Oldham on another part of Moody’s patent, while Taylor was in possession of this tenement, or of his taking the lease afterwards from McMillan’s heirs, or of his taking, at a still later period, Taylor’s obligation for the rent, while he was the tenant of Matherly, are clearly erroneous-.
Whether Samuel Noe’s possession, taken in 1827, was in any manner affected by the fact that he had, in 1823, taken a transfer of Oldham’s lease from the McMillans, is not made a question in this Court, and does not seem to have been moved in the Circuit Court; nor do the facts now appearing justify the supposition that it will be a serious question hereafter; it is, therefore, deemed unne-. cessary to express any opinion on the subject. But for the errors before noticed, the judgment is reversed, and the cause remanded, that a new trial may be had,. principles not inconsistent with this opinion,.