## Russell v. McIntosh.

(Decided March 8, 1918.)

### Appeal from Powell Circuit Court.

1. Ejectment—Right to Possession.—In actions, in ejectment, the plaintiff must recover on the strength of his own title—that is, upon the showing of his right to the possession, and not because of any want of right in the defendant to the possession.

2. Ejectment—How Right to Possession May be Shown.—The plaintiff, in ejectment, may show his right to the possession by proving his legal title to the lands. sought to be recovered, which he may do by showing a connected legal title by patents, deeds, and other written evidences of title from the Commonwealth to himself, or that he has acquired title to the lands by adverse possession for the statutory period.

3. Ejectment—Nature of Possession.—A plaintiff, in ejectment, may recover by showing a bare possession, less than the statutory

period, as against a mere trespasser or intruder, without color of title, who has ousted the plaintiff from a peaceable possession.

4. Ejectment—Burden of Proof.—The burden is upon a plaintiff, in ejectment, who relies upon a deed, which contains exclusions and exceptions, to prove that the land, which he seeks to recover, is embraced by the ' deed, and is not contained in any of the exclusions or exceptions, and if he does not do so, his action fails.

5. Estoppel—Entry Upon Land—Denial of Title.—Where one enters upon land, under an agreement with another to hold the land for him, and to purchase it from him in the future, the one so entering or any one holding under him is estopped to deny the title of the one under whom he enters and holds, but one claiming to be the vendee of such landlord must show that he has succeeded to the rights of the landlord, before he can rely upon the estoppel.

C. F. SPENCER for appellant.

W. A. STANFILL, FAULKNER & FAULKNER and JOHN D. ATKINSON for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

This was an action, in ejectment, by the appellant, F. B. Russell, in which, he sought to recover from the appellee, Simpson McIntosh, a small tract of land, containing between nine and ten acres, in Powell county. The appellant, who was the plaintiff below, alleged, that he was the owner and had a legal title to the land, and that the appellee, who was the defendant below, had wrongfully taken possession of the land and was withholding the possession from him. The answer put the legal title and the right to the possession, squarely, in issue. The defendant, furthermore, alleged in his answer, that he was the owner and held the legal title to the premises sued for, and that he and those under whom he claimed had been in the continuous, peaceable and adverse possession of it, claiming it as their own, to a well defined and marked boundary for more than fifteen years before the institution of the action. The affirmative averments, in the answer, were denied by a reply. A trial of the issues being had before the court and a jury, the jury found a verdict in favor of the defendant, but upon the motion of plaintiff, the verdict was set aside and a new trial granted. Thereafter, another trial of the action was had, which resulted in the jury finding a verdict in favor of the defendant, again, and a judgment of the court dismissing the plaintiff's petition. The plaintiff's motion and grounds for a new trial being overruled, he has

appealed from the judgment and now insists, that the judgment should be set aside and a new trial granted him, because the circuit court erred, in permitting the defendant to read in evidence a deed from R. A. Mason, and others, to Calvin McKnight, dated in the year, 1887, and which embraced the lands, in controversy, and under which the defendant claimed title and possession and for the further reason that the court gave an instruction permitting the jury to find for defendant because of adverse possession. At the conclusion of the evidence for the plaintiff, upon the trial, and at the conclusion of all the evidence, the defendant moved the court to direct a verdict in his favor, and he now insists that the judgment ought to be affirmed, because the plaintiff failed, upon the trial, to show that he had any title to the lands in controversy, and therefore was without right to its possession.

In actions of ejectment, the plaintiff must always recover, if he recovers at all, upon the strength of his own title, that is, upon the showing of his right to the possession of the lands sued for, and not because of any want of right in the defendant to the possession, and hence, if the plaintiff fails to manifest a right to the possession, the defendant is entitled to a directed verdict in his favor, but if the court having denied that, to the defendant, and submitted the plaintiff's right of recovery to the jury, which found such a verdict, under the instructions given, as the court should have directed in favor of the defendant, the plaintiff would have no cause of complaint, because of incompetent evidence received for the defendant nor because of erroneous instructions given.

In an action in ejectment, the possession of the land is the chief thing sought, but, the plaintiff must, in some proper way, manifest his right to the possession, the burden is upon him to do so, and if he fails to do so, he must necessarily lose, because, if he has not the right to the possession, it is a matter of indifference to him, as to who does have the possession.

The plaintiff, in such action, may prove his right to possession by showing, that he is the owner of the legal title, and that the possession is wrongfully being withheld from him. He may show that he is the holder of the legal title by putting, in evidence, a connected chain of conveyances from the Commonwealth of Kentucky down to himself, and where the property passes by inheritance, to prove that fact; or he may prove his legal title by

showing an adverse possession of the property by himself, and those under whom he claims, for the statutory period. Shutt v. Travis, Snead, 307; Anderson v. Turner, 3 Mar. 134; Vaughn v. Mills, 18 B. M. 634; Bailey v. Tygart, 10 R. 676; Green v. Wilson, 8 R. 601; Davis v. Justice, 8 R. 258; Ratcliff v. Elam, 14 R. 772; Howard v. Singleton, 94 Ky. 336; Hamilton v. Hamilton, 16 R. 793; Ray v. Sweeney, 14 Bush 1; Chism v. Trent, 10 R. 849; Sutton v. Pollard, 96 Ky. 640; Warmouth v. Fitchen, 6 R. 584; Taylor v. Arnold, 13 R. 516; 9 R. C. L. 853; Taylor v. Buskner, 2 Mar. 18; Peters v. Allison, 1 B. M. 232.

The plaintiff, in ejectment, may also, show his right to possession, by proving, that he was in the peaceable possession of the property and was ousted therefrom by the defendant, who was a mere intruder and trespasser, without color of title to the property. The plaintiff may, under such circumstances, succeed, although he shows only a bare possession and less, in point of time, than the statutory period, as where the defendant is utterly without right or title, the law presumes some right in the one already in possession. Ratcliff v. Bell Fonte Iron Works, 87 Ky. 559; Sowders v. McMillian, 4 Dana 462; Fowke v. Darnal, 5 Lit. 317; Myers v. McMillian, 4 Dana 485; Pollitt v. Bland, 15 R. 227; Young v. Cox, 12 R. 347; Asher v. McCarty, 2 R. 218; McLawrin v. Salmons, 11 B. M. 16.

The plaintiff, in his petition, does not allege that he had ever been in the possession of the land sued for, and that defendant or any of his vendors had ousted him, but bases his right of recovery upon his ownership of the legal title. There is no proof that any of the predecessors, in title, of plaintiff were ever in actual possession of the land, in controversy, except the testimony of one witness for the defendant, who states, that he held it for three or four years under a lease, presumably by the Kentucky River Iron Manufacturing Company or the Kentucky Union Land Company, and that was previous to the year, 1897, which, of course, was not a sufficient length of time to create title in any predecessors of plaintiff, by adverse possession. The evidence offered by plaintiff, in the way of writings, deeds and conveyances, to show legal title, in himself, fails to prove that the plaintiff has a legal title to the land sued for, when considered by themselves. He does not show any connected chain of title from himself to the Commonwealth of Kentucky nor to any title holder, common, as a vendor, to himself and the defen-

dant. Hence, his legal title, if any he has, must arise entirely from an adverse possession of the land, in controversy, for the statutory period. There being no *pedis possionem*, as heretofore shown, of a sufficient length of time, to create title, in any of the predecessors in title of plaintiff, the only way, in which he could become the owner by adverse possession of the property, would be to show, that the title papers, under which he claims the land, actually embraces it, and that the title paper of his predecessors likewise did so, and that either he, or his predecessors in title, had actual possession of the lands embraced by his deed, by occupying it himself or by tenants, with the intent to possess and hold the land to the boundaries of his or their deeds. An adverse possession must necessarily be an actual possession, and one in the occupancy of a tract of land with the intent to claim and hold it to the extent of the boundaries of the instrument, under which he holds it, is in the actual possession of it all, to the extent, that it is not actually held by some other person. So, it becomes necessary to determine, in the present instance, from the evidence, that the land in controversy is actually embraced by the title paper, under which appellant holds, before he could possibly be either the owner of the property or have actual possession of it. The land is situated about one mile from the old Estill Furnace. There was read in the evidence a contract between certain parties, who, in the year 1849, agreed, that all of the lands within four miles of the Estill Furnace should be the property or should be for the special use and benefit of certain parties, unless such parties should sell lands below the mountain on the Hardwick creek side, and in the event they did so, these lands should be for the equal benefit of all the parties to the agreement. It was, also, agreed that all sales, of the lands, theretofore, made by any of the parties or their predecessors, should be ratified. It can only be concluded from this writing, that sales had been made to other parties of portions of the lands, within the four mile circle around Estill Furnace, the titles, to which were ratified by the contracting parties, by the agreement. The next paper relating to the lands, in point of age, is a deed from the commissioner of the Estill circuit court to the Red River Iron Manufacturing Company, dated October 19, 1869, and made in the action of Josiah Jackson's administrator against Josiah Jackson's heirs and creditors.

This deed was made on behalf of some of the parties, who were parties to the agreement made in the year, 1849, and of other parties not known to that agreement, while it does not appear that all of the parties to that agreement, who were to have the benefits of the lands within the four mile circle of Estill Furnace, nor their heirs, were parties to that action, and the deed conveys "all the right, title and interest of Samuel Jackson & Company and Josiah A. Jackson in and to all of the lands they had any interest in" within that circle, but the deed expressly reserves the rights of all purchasers, whatever they may be, to such purchasers, and only conveys the property subject to the exception in behalf of prior purchasers of the lands. As to how many of the grantors in this deed, on whose behalf it was made, were the owners of any of the lands within the circle, is not made to appear, and neither is it shown who were purchasers of the lands within that circle, theretofore, and what lands it was that the conveyance did not include. The next paper pertaining to title offered in the evidence was a deed from the Kentucky River Iron Manufacturing Company to Thomas Dewitt Cuyler, dated February 14, 1898, and purports to convey the Furnace tract of land, which the deed recites contains 3,200 acres, which is probably a mistake and was intended for 32,000 acres; the Forge tract containing 18,000 acres, the Cobb Mountain tract containing 175 acres, and, also, another tract of land in Estill county. It, however, appears from this deed that these were the tracts of land, which were conveyed to the Kentucky River Iron Manufacturing Company, by one Edward K. Goodnow, on January 28, 1881. There is, also, parol evidence, that some time previous to the conveyance from the Kentucky River Iron Manufacturing Company to Cuyler, that the holdings of this company or some part of them had been claimed or owned by the Kentucky Union Land Company, but how long the Land Company was the owner or whether it was the owner of all or only a part of the lands within the four mile circle does not appear. Neither, does it appear, for what length of time the Kentucky River Iron Manufacturing Company had held title to the lands embraced within the deed to it from Goodnow, if such deed it had, at the time, it conveyed to Cuyler. On April 7, 1902, Cuyler executed a deed of conveyance to the appellant, Russell, by which he conveyed to him the lands embraced within the

Furnace tract, but excepted from the conveyance forty separate tracts of land, containing from one acre to several hundred acres. It seems that the outside boundary of the entire Furnace tract of land is described in the deed from Cuyler-to plaintiff, and the only proof, if it can be called proof, that the land, in controversy, is embraced by that deed, is a question put to the plaintiff, wherein he was asked, if the description in that deed included the little tract of land, in controversy, and he answered that it did. It is apparent, that from this question and answer, alone, that it is impossible to say whether or not the land, in controversy, in this action is contained in one of the forty odd tracts, excepted from that conveyance, or whether it is not embraced within any of the exceptions. The description in the deed embraced all the lands, within its outside boundary. It is a well established rule, that where a deed or patent is relied upon for title, or to show the extent of possession, and there are lands excepted from the deed and not conveyed by it, the burden is upon the one who relies upon such deed or patent to show, by proof, that the land, he is seeking to recover, is not embraced by one of the exceptions, otherwise he fails to show title under his deed, and would necessarily fail to show possession under such a deed, when the deed is used for the purpose of showing the extent of the possession. Fuller v. Kessee, 31 R. 1099; Bowling v. Breathitt Coal, Iron & Lumber Co., 134 Ky. 249; Caddell v. Eagle Coal Co., 144 Ky. 396; Steele v. Bryant, 137 Ky. 569; Miller v. Breathitt Coal, Land & Lumber Co., 152 Ky. 390; Tennis Coal Co. v. Sackett, 172 Ky. 729. The appellant does not show in evidence, the title paper, under which Cuyler's vendor held the land previous to the year, 1898, but if such deed was similar to the one under which the Red River Iron Manufacturing Company held the land in 1869, it contained many exceptions and exclusions, as well as the deed under which plaintiff, himself, holds, and under-those title papers it does not appear, that the land in controversy was not embraced within some exclusion or exception, and especially under the deed under which appellant himself holds. If the land, in controversy, was embraced within some of the exceptions or exclusions, in the deeds, under which appellant's predecessors in title held the property, the occupancy by tenants of other portions of the land or any portion of the land, while owned by plaintiff's prede-

.cessors, could not give any possession of the land in controversy, although the tenant might not be restricted in his possession and was there for the purpose of holding to the extent of the boundaries of his landlord's title. It is true, there is evidence that plaintiff's predecessors, in title, had many tenants upon the lands within the four mile circle around Estill Furnace, during many years, but there is a failure to show that the tenants were unrestricted in their holding of the property or whether they were there for the purpose of possessing the property for the owner, to the extent of the boundaries of his deed, and were not limited to the portions occupied by them, nor does the evidence show, in the least, as to what portions of the land were held by the tenants and what portions were not held by them.

The judgment of the federal court in the action of Thomas Dewitt Cuyler against Robert A. Mason, which was read, in evidence, over objections, was a judgment in an action, in which neither the defendant nor any one under whom he claims was a party, and was rendered in a suit brought after the lands in controversy were conveyed to McKnight, under whom the defendant claims. The judgment quieted the title in Cuyler, to certain portions of the lands within the circle, which were claimed by R. A. Mason, and as against Mason's claim, but at the time of the bringing of the suit, in which this judgment was rendered, and, at the time of its rendition, R. A. Mason, had no interest in the land, in controversy, as he had joined in a deed with others, theretofore, conveying the lands to McKnight. The deed to McKnight was made, not only, by R. A. Mason, but three other joint claimants with him, and, under the facts, it does not appear that such judgment was competent as evidence upon this trial, except for the purpose of showing the extent of the possession of Cuyler, as to lands claimed by R. A. Mason within the boundaries designated. The judgment, however, only purported to affect the portion of the land within the four mile circle, and while the evidence shows, that the lands, in controversy, in this suit, are embraced within the effect of the judgment, it does not show that the tract of land sued for is embraced by the deed from Cuyler to plaintiff, and is not within one of the many exceptions, in that deed.

Hence, it seems that the plaintiff having failed to show a legal title to the lands, either by a connected title

from himself to the Commonwealth of Kentucky or by adverse possession, the court should have sustained the defendant's motion for a directed verdict in his favor, so far as it was necessary upon plaintiff's part to recover the possession of the land on account of being its legal owner and having the right to possession, upon that account.

If the lands, sued for, had been embraced in the deed of conveyance from Cuyler to plaintiff, and were not contained in one of the exceptions in the deed, there was a question, which, under the evidence, that plaintiff was entitled to have submitted to the jury, and that was his contention, that Watson, the remote vendor of defendant, and one of those under whom defendant claims, had entered upon and taken possession of the land under an agreement to hold the land under Cuyler and to purchase it from him in the future. If so, Watson would have been estopped to deny plaintiff's title and the same estoppel would prevail against the defendant. Sanders v. Moore, 9 R. 965; Miller v. South, 12 R. 351; Turley v. Rogers, 1 A. K. M. 245; Fowke v. Darnal, 5 Lit. 317. If Watson entered into such an agreement with plaintiff's vendor and the lands sued for were conveyed to plaintiff by his vendor, the jury should have been instructed to find for the plaintiff, with the converse to find for defendant, if the agreement was not made, and the instruction should not have had any qualification relating to repudiation by Watson or any one claiming under him of the tenancy, as less than fifteen years intervened between the making of the agreement, if it was made, and the bringing of plaintiff's suit. The alleged agreement was, however, made between Watson and Cuyler, and unless the land was embraced within the deed, which Cuyler thereafter made to plaintiff, the right of Cuyler, in the premises, did not pass to the plaintiff and without evidence that plaintiff had been conveyed the land by Cuyler, the plaintiff has no cause of action because of the agreement. Further, the plaintiff did not offer any such instruction as mentioned above, and did not object to the one, which was given, touching the alleged agreement, and does not make complaint of it. Hence, the verdict of the jury being such as the court should have directed, there is no reason to set it aside or reverse the judgment based upon it.

The judgment is therefore affirmed.