## Wynn v. Gover et al.

(Decided May 14, 1937.)

R. C. TARTAR for appellant.

H. C. KENNEDY and SAM KENNEDY for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an action to quiet title brought by the appellant, George A. Wynn, against the appellees, T. M. Gover and Walter Stigall.

The appellant brought this suit in equity in the Pulaski circuit court against the said named defendants, alleging in his petition that he was the owner and in the possession of a certain named tract of land therein specifically described in its boundary by the metes and bounds set out.

Further, he alleged that the defendants, T. M. Gover and wife, Nellie Gover, were setting up claims of ownership to about 15 acres of land lying on the west of his said boundary and that the defendants, Walter Stigall and wife, Delie Stigall, were likewise setting up claims to about 60 acres of land as embraced within the north part of his aforesaid boundary and asked that his title

to the boundary of land therein set out be quieted and that defendants be adjudged to release all claims made thereto.

To the petition a joint and separate answer and counterclaim was filed by the defendants Gover and wife, and also by the defendants Stigall and wife, wherein by each the said defendants not only denied the plaintiff's ownership or right to possession of their respectively claimed 15 and 60-acre tracts of land referred to in the petition, but asserted and counterclaimed that they were the owners and entitled to the possession respectively of the said 15-acre and 60-acre tracts sought to be recovered and that their titles thereto were superior to any alleged claim of plaintiff thereto, for which reason the defendants asked that they be adjudged to be the owners and entitled to the possession of said tracts and that their titles thereto be quieted as against the plaintiff and those claiming under him.

Issues were joined by a reply, when, upon motion of the defendants, the cause was transferred to the ordinary docket for trial upon the legal issues involved.

Upon a trial of the case before a jury, the court, at the conclusion of plaintiff's testimony, overruled defendants' motion for a peremptory instruction, but upon its renewal at the conclusion of all the testimony, sustained the motion and peremptorily instructed the jury to find a verdict for each of the defendants, which was done.

The cause was then retransferred to the court's equity docket for granting the equitable relief sought, when the court further decreed that each of the defendants, T. M. Gover and Walter Stigall, be quieted in their respective titles to the tracts claimed against the claims thereto of the appellant, George A. Wynn, and all persons claiming under or through him.

The plaintiff, dissatisfied with this judgment, has appealed, urging but the one ground for its reversal, that the court prejudicially erred in peremptorily instructing the jury to find for the defendants.

The one question thus presented on appeal is whether the evidence heard upon the trial was sufficient to make an issue which should have been submitted to the jury for decision. It is insisted by appellant that it

did entitle him to go to the jury under the "scintilla rule," in that the conflicting evidence created a sharp dispute as to the facts, which could only be properly determined therefrom by the jury.

It is disclosed by the evidence that the appellant resides upon the tract of land, portions of which he contends are involved by the claims of appellees in this controversy. He had resided on this land under his title, acquired by its purchase since 1918. No surveyor testified that he had run all the controverted lines of or located the tracts involved here, but the contentions on each side are attempted to be sustained, for the most part, only by the statements and deeds introduced in evidence by the parties and their witnesses.

In such wise, the appellant, in seeking to establish title to the land boundary [portions of which he contends the defendants (here appellees) are claiming and in possession of] introduced a commissioner's deed, purporting to convey him the lands formerly owned by one Abel McDaniel and which deed was executed him by the commissioner pursuant to the order and direction of the court entered in a suit filed in the Pulaski circuit court in May, 1917, by Thenia McDaniel et al. v. Lena McDaniel et al, to settle the estate of their deceased ancestor, Abel McDaniel.

This commissioner's deed, on which the appellant relies for his recovery of the two tracts held and claimed by the defendants, not only recites the names of the McDaniel heirs, whose interests in the Abel McDaniel estate were conveyed by the deed, but shows on its face that it was duly presented in open court, when it was examined and approved by the court, and that his approval was indorsed on the deed and recorded with it. Also, it appears, the said commissioner's deed executed appellant set out and described the boundary of land therein conveyed according to the courses, corners, and calls of a survey which the court had directed made when ordering a sale of the lands owned by the said deceased McDaniel's estate.

However, it may here be observed, as one creative cause of the confusion of title we have here encountered with respect to the two tracts involved, that the calls and courses of the description of this boundary of land conveyed by the commissioner to appellant are altogeth-

er different from those given and set out in appellant's petition in there describing the land claimed by him.

Notwithstanding such difference of description of the claimed boundary as given in the petition and that as given in the commissioner's deed, upon each of which appellant relies, neither he nor any of his witnesses testified that the tract of land described in the petition and that differently described in the commissioner's deed is the one and the same tract of land, nor do they undertake to explain the discrepancy between the calls of the petition and those of the deed, under both of which, by such different descriptions, he claims title to but the one boundary of land conveyed him, which he contends embraces the defendants' land here sought to be recovered.

Under such circumstances, appellant can hardly contend that he has proven his ownership of the boundary of land as set out in his petition by the commissioner's deed, introduced and relied on by him for such purpose, where the boundary calls of the land therein conveyed him are entirely different from those set out in the petition as being descriptive of the boundary of land whose ownership and right to possession he alleges.

On the other hand, the two defendants, Gover and Stigall, introduced in evidence the deeds under which they hold possession and claim their respective boundaries of land, which set out particularly the metes and bounds of these tracts to which they thereunder respectively claim title and right of possession, and deny that the appellant is the owner or entitled to the possession of the said tracts, referred to in his petition as being located on the west and north sides respectively of the tract of land described in his petition or that he is the owner of any part thereof.

Further as to this commissioner's deed, upon which appellant relies as constituting his source of title to the deceased McDaniel's land, the appellees contend that such a deed is not sufficient in itself to show title thereto, but that it is necessary to show further by the record that all the steps preceding and following the commissioner's sale were legal and regularly taken, which they claim was not shown in the instant case.

However, while such a rule as contended for may apply in the case of a sheriff's deed, it has been re-

peatedly declared by us that it is not applicable in the case of a commissioner's deed, which on its face shows its examination and the approval by the court and that it was indorsed on it and recorded with it.

In the case of Helton v. Belcher, 114 Ky. 172, 70 S. W. 295, 24 Ky. Law Rep. 927, such rule and the applicable provisions of the Civil Code of Practice supporting it were thus stated:

"By our Code of Practice it is provided that a commissioner's deed shall 'refer to the judgment, orders and proceedings authorizing the conveyance, so that the same may be readily found,' and that it 'shall pass to the grantee the title of all the parties to the action or proceeding.' It must be examined and approved by the court and its approval 'shall be endorsed on the conveyance and recorded with it.' Civ. Code (Prac.), secs. 395-398. It must be recorded where by law it would have been recorded if made by the parties in person. Civ. Code (Prac.), sec. 400. By section 519, Ky. Stats., it is further provided: 'Certified copies of all instruments legally recorded shall be prima facie evidence in all courts and tribunals of this state.' It will thus be seen that these statutes taken together, in substance provide that the deed, when examined and approved by the court and so indorsed, may be legally recorded, and that a certified copy of this record shall be prima facie evidence in the courts of the state."

To like effect was the rule again so announced in the much later case of Jones v. Johnson, 223 Ky. 478, 3 S. W. (2d) 1064, 1065, approving and following the holding of the Helton Case, supra:

"The comimssioner's deed on which appellee relies not only recites the names of the parties whose interests were conveyed by the commissioner, but shows on its face that it was examined and approved by the court, and that his approval was indorsed on the deed and recorded with it. In such a case it is now the settled rule that the deed itself is admissible as evidence of title without the introduction of the judgment, or any other portion of the record of the proceeding in which the deed was directed to be made. Helton v. Belcher, 114 Ky. 172,

70 S. W. 295 (24 Ky. Law Rep. 927); Conley v. Breathitt Coal, Iron & Lumber Co. (Ky.) 113 S. W. 504; Kentucky Coal Lands Co. v. Smith (149 Ky. 794, 149 S. W. 979); Sears v. Collie, 148 Ky. 444, 146 S. W. (1117) 1121; Cooper v. Williamson, 191 Ky. 213, 229 S. W. 707.''

Also, in support of his contention that the boundaries of the tract deeded him embraced the two tracts claimed by defendants, appellant called as a witness, F. E. Grabeel, who testified that he had been appointed by an order of the court in the Thenia McDaniel suit, supra, to make a survey of the McDaniel lands (according to which the calls of this commissioner's deed here involved were later made) and that the McDaniel lands embraced in his survey, so made, were parts of the following named boundaries of land which had been conveyed him:

"A Patent to Abel McDaniel by the Commonwealth of Ky. bearing date of 25th day of September, 1845, containing 28 acres:

"A Deed bearing date of July 26th, 1870, from Wesley G. Gover to Abel McDaniel, containing 8 acres;

"A Patent from the Commonwealth of Kentucky to John Goff, Assignee of Benjamin Hansford, Assignee of John Dollerhide, who was assignee of Benjamin Hansford, bearing date of July, 1807, and assigned and conveyed by a deed of conveyance from the said patentees to Abel McDaniel, but which deed of conveyance is lost, containing 81 acres.''

However, appellant did not show or undertake to show by the witness that the lines of the survey so made by him ran over or upon, or so as to include these two tracts, title to which he is claiming. Neither did he locate the tracts claimed by defendants as being within the boundary of land conveyed appellant by the calls of the commissioner's deed nor within his boundary as described and set out by the metes and bounds in his petition.

As to Gover's 15-acre tract in controversy, plaintiff, in support of his claim of ownership to it, introduced in evidence the deed of Wesley Gover (under

whose will, devising the defendant, his son, his lands, the defendant Gover claims the 15-acre tract in controversy) dated July 26, 1870, by which he conveyed to Abel McDaniel a certain 8-acre tract of land; also the deed of Sam Bryant, dated August 11, 1862, whereby he conveyed to Abel McDaniel a 6-acre tract of land; also a 38-acre land patent from the state of Kentucky to the said McDaniel, dated September 25, 1846, of which patented land he stated Gover was claiming about 2 acres.

However, while it sufficiently appears that such lands were in fact deeded to and acquired by the decedent, Abel McDaniel, during his lifetime, it is not shown that they were all owned by Abel McDaniel at the time of his death or that the tracts involved were embraced within the survey of his lands then made, and pursuant to which the commissioner's deed thereto was executed to plaintiff. Neither does any surveyor or other witness, claiming knowledge or personal information as to the location of the corners and calls of the boundary set up in the commissioner's deed, testify as to what, if any part of the land within such boundary is the same as that claimed and occupied by either of the defendants.

The appellant does state that the lands embraced within the calls of the commissioner's deed were known to him as being the McDaniel lands, though how known and established he does not state, except that certain of the McDaniel heirs or an old man, McCagey Hughs, McDaniel's kinsman and an infrequent visitor in his home, and also his son, had told appellant that these lands here involved, which they pointed out to him upon a named occasion, were parts of the McDaniel lands.

As against this, the defendant Gover says that the boundary of land, of which he is in possession and claiming title to, was acquired by him under the will of his father, Wesley Gover, in 1885, since which time he has been in actual and continuous adverse possession thereof, to the extent of its named boundaries, or for a continuous period of years greatly in excess of the applicable statutory period. Also, that while plaintiff, since his purchase of the McDaniel land at the commissioner's sale, had crossed over and cut some timber from off the here claimed land of the defendant, adjoining that of plaintiff, the latter had yet, when later spoken to about it, promised to pay him for his trees which he

had wrongfully cut, or, according to appellant's report, had conditionally promised to pay defendant therefor, "if he showed him that he was the owner thereof," a statement in itself acknowledging appellant's doubt as to his ownership of such parcel of land upon which he was charged with trespassing and which was then being adversely held by defendant Gover under title thereto derived from his father, Wesley Gover.

Further, the appellant, having introduced the deed of Wesley Gover to Abel McDaniel, whereby it is shown that he conveyed 8 acres of land to the latter, utterly fails to locate this said 8 acres, so conveyed McDaniel, as being within or a part of the boundary of land claimed by him under the commissioner's deed or to in anywise connect such 8 acres with the Gover land in controversy.

The same may also be said as to the appellant's failing to show, after having introduced in evidence the deed of Sam Bryant to the deceased's McDaniel for a further 6-acre tract of land, that such 6 acres was included within appellant's boundary or had any connection with the land in controversy.

Only a part of these named tracts of land acquired by Abel McDaniel through these several grants was included within the survey and boundary of his estate's land (as testified by Mr. Grabeel, who made the survey) and the commissioner's deed conveyed to appellant only that part of Abel McDaniel's lands included in said survey and boundary.

Also, as to the second 60-acre tract claimed by appellant in his petition to be wrongfully held by the defendant Stigall, which according to the evidence comprised the old Abel McDaniel home tract of 40 acres and an adjoining field of 15 acres, appellant abandons his claim as to this 60-acre tract except as to its 14 or 15-acre field adjoining his land, which he contends is embraced within the calls of his commissioner's deed, which claim he trys to "bolster up" with the contention that if this field is not embraced within the calls of his commissioner's deed, he is yet entitled to same by reason of his continuous and adverse possession of it for the statutory period.

The evidence as to this, however, clearly shows that appellant has not adversely and continuously held,

claimed, and used this 14-acre tract as the owner for the statutory period, nor has he used and cultivated it during such time as the owner, in that it is shown by the testimony of the husband of Thenia McDaniel that they used, cultivated, and rented out this land during the years before and after the appellant claims to have become its owner under the commissioner's deed in 1918, and that no claim of ownership thereto was made by appellant.

Appellant states that he did rent this land out for corn during the years 1919 and 1920, but the further uncontradicted evidence in regard to such claim shows that during such years it was rented not by the appellant but by Thenia McDaniel, as the owner, to one Riley Neeley for money rent, who, having no work stock with which to cultivate it, entered into an agreement with the appellant, whereby, in consideration of the latter's furnishing him the needed work stock to cultivate the field, he agreed to give him a one-half part of the corn produced thereon.

Appellant does not deny that such were the facts and circumstances as to his having been thus interested in the renting and running of this field for these years to Neeley, from which it is apparent that, such being shown to have been the nature of appellant's use and management of this tract during the years 1919 and 1920, he could not have held the same continuously and adversely as owner thereof against the world for the required statutory period prior to its conveyance by Thenia McDaniel Waddle and husband to the defendant, Walter Stigall in 1934.

Also, looking further to another claim of the appellant made in reference to the defendant Gover's claiming as a part of the 14 acres sued for something like two acres of the 38-acre tract of land patented to Abel McDaniel, which was, he contends, as such, also embraced in the later survey and sale of the McDaniel lands to him.

In addition to such claimed paper title to the land, he also asserts ownership of it and other of the tracts sued for by adverse possession, in that, he claims, he has used and improved it for the statutory period of 15 years, since buying it as a part of the McDaniel estate land in 1918.

However, the evidence, upon which appellant relies to show such adverse use and occupancy, shows that appellant's use and improvement of this small piece of land consisted only of some work done on an old road passing over it (which, it is testified, had been there for some 50 years and which was used by the deceased Abel McDaniel in hauling produce in and out of his place), so as to put it in such condition that he could, when necessary, use it.

Clearly such sporadic use and possession of this 2-acre tract, or rather, the repair work done by him on this old road crossing such tract, lying next the land he did own, cannot be said to satisfy the continuous adverse use and possession of land required for thereby procuring title.

The rule is that possession of land which party owned does not constitute the requisite character of possession of other land which he does not own, to acquire title thereto, though covered by his deed. Burt & Brabb Lumber Co. v. Sackett et al., 147 Ky. 232, 144 S. W. 34.

One in the occupancy of a tract of land, with the intent to claim and hold it to the extent of the boundaries of the instrument under which he holds, is in "actual possession" of all to the extent that it is not actually held by some other person. Russell v. McIntosh, 179 Ky. 677, 201 S. W. 33.

Adverse possession can rest only on physical acts giving owner constant notice of another's possession and must continue uninterruptedly for 15 years. Griffith Lumber Co. v. Kirk, 228 Ky. 310, 14 S. W. (2d) 1075.

A grantee of land cannot acquire title to additional land by merely claiming outside and beyond his deeded boundary. Brown v. White, 153 Ky. 452, 156 S. W. 96; Culton v. Simpson, 265 Ky. 343, 96 S. W. (2d) 856.

In view of these shortcomings in appellant's attempted showing of title by adverse possession to the lands he has here sought to recover from the defendants, T. M. Gover and Walter Stigall, we are led to conclude that no issue was made thereby upon which appellant was entitled to go to the jury. Evidence we have defined as being, even when considered in the light of the "scintilla rule," something of substance and probative quality, having the capacity of inducing conviction, and

when of such character and a conflict is created, its determination must then be left to the jury.

Our consideration of the evidence, reviewed above with some fullness (deemed needful because of the nature of appellant's ground of appeal, that the court erred in peremptorily instructing the jury to find for the defendants thereon), leads us to conclude that, the appellant having here claimed title and right of possession to certain lands described in his petition and in the commissioner's deed under which he claims title by different boundaries and calls, and, further, having failed either to show or locate the lands he seeks to recover of the defendants, as being within the land boundaries claimed by him, or what part, if any, thereof they are, and having equally and signally failed to show title by adverse possession to any of the lands, or any part thereof, which he seeks to recover, the learned trial court did not improperly, upon such showing made by his evidence, instruct the jury to find for the defendants, and adjudge that the defendants be quieted in their respective titles to their lands here involved as against the claim of the plaintiff and all others claiming under him.

From this it follows that the judgment of the chancellor, reflecting views in harmony with our own, should be, and it is, affirmed.